**Ronald S. MONROE, Petitioner–Appellant,**

v.

**Hilton BUTLER, Warden, Louisiana State Penitentiary, Respondent–Appellee.**

No. 88–3447.

United States Court of Appeals, Fifth Circuit.

July 26, 1988.

John DiGiulio, Baton Rouge, La., Allan Blumstein, Jonathon J. Freedman, Douglas G. Morris, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for petitioner-appellant.

Brian T. Treacy, Asst. Dist. Atty., New Orleans, La., for respondent-appellee.

Before REAVLEY, KING and WILLIAMS, Circuit Judges.

REAVLEY, Circuit Judge:

Robert S. Monroe, convicted of first-degree murder, is sentenced by a Louisiana

court to die on August 25, 1988. The federal district court has denied his latest petition for writ of habeas corpus and Monroe now applies for certificate of probable cause and for a stay of his execution. Finding no substantial showing of the denial of a federal right, we deny the certificate of probable cause as well as the stay of execution. *See* 28 U.S.C. § 2253; *Barefoot v. Estelle*, 463 U.S. 880, 893 & n. 4, 103 S.Ct. 3383, 3394 & n. 4, 77 L.Ed.2d 1090 (1983).

■ Monroe stands convicted of the first degree murder of Lenora Collins on September 10, 1977. He was tried, convicted and sentenced to death on January 26, 1978, and again on January 23, 1980 after the first conviction was reversed by the state court. On the eve of an execution set in early 1984, the federal district court granted relief to Monroe on the ground that, after the conviction but when newly discovered evidence could be urged for a new trial, information had been received by Louisiana officers from Michigan authorities that the former common-law husband of the deceased Lenora Collins may have admitted guilt to a cellmate in a Michigan jail. Because Louisiana authorities failed to disclose potentially exculpatory evidence to Monroe or his attorneys, the district court ordered:

> Petitioner's date of execution is postponed and the State of Louisiana is directed to grant to Petitioner whatever he was entitled to by way of post-conviction relief during the limitation period provided by Louisiana law for a request for a new trial based upon the exculpatory material which the State courts did not have an opportunity to consider, so that Petitioner may fully and effectively exercise and exhaust his post-conviction relief rights under Louisiana law.

By the 1984 appeal to this court Monroe argued that it was error for the district court to do no more than order reconsideration of Monroe's motion for post-conviction relief, and that the federal court was required to order a new trial. We rejected the argument and affirmed. *Monroe v. Blackburn*, 748 F.2d 958, 960 (5th Cir. 1984), *cert. denied*, 476 U.S. 1145, 106 S.Ct. 2261, 90 L.Ed.2d 706 (1986).

The state court held an evidentiary hearing on December 1, 1986 on Monroe's motion for new trial. Petitioner introduced no evidence that was not before the federal courts at the time of the 1984 hearings. His proof consisted only of exhibits reflecting the prior proceedings in federal court and the affidavits and statements which led the federal court to enter the 1984 order. The state called one of the two children of the victim to testify again to having seen Monroe stab her mother to death. This witness, who was herself stabbed by Monroe during the incident, was 20 years old when she testified on this latest state court hearing. The state trial court denied Monroe's motions on February 2, 1987, finding that the newly discovered evidence failed to justify a new trial under the Louisiana law since it could not be said that, if introduced at trial, it would probably change the verdict of guilty. The Supreme Court of Louisiana denied the petitioner's application for writ on September 21, 1987, as did the Supreme Court of the United States on April 25, 1988.

The State of Louisiana has now complied with the 1984 order of the federal court, afforded the petitioner a full opportunity to present any evidence that would justify requiring a new trial, and has denied the post-conviction motions pursuant to the law of Louisiana. The state court cannot be faulted for deciding as it did on the evidence before it. The only information in the record that could be said to be helpful to Monroe consists of reports of conversations between George Stinson, the former common-law husband of the deceased, Lenora Collins, and his cellmate, Francis Lee McWilliams. Stinson was in jail for stabbing to death his Michigan common-law wife, Erma Jean Lofton, for which he was subsequently convicted. Stinson is reported to have described this crime to McWilliams and further, to have said that the same thing happened to his former wife, Collins. Stinson testified under a grant of immunity at the hearing before the federal magistrate in 1984 to the effect that he had told McWilliams that Collins was killed in a

similar way but he did not say or imply that he personally had any guilt in her death. McWilliams was brought to the hearing before the magistrate but was not called to testify.

There is some suggestion in these documents that the victim's children were coerced by Stinson to testify against Monroe, but it was established at the hearing in 1984 that there was no substance to support this notion. The rumor was traced to the wife of Ronald Monroe who told the sister of the Michigan victim, Lofton, who told a Michigan officer who told the attorneys for the petitioner. The witness who testified at the trial and who, now 20 years old, testified at the recent state hearing, fully disposes of that rumor.[1]

Considering what was before the state court on this motion for new trial, that court could be expected only to deny the motion.

Petitioner is here arguing that the federal court found a *Brady* violation in 1984 and was thereafter estopped from denying Monroe a new trial. Petitioner's arguments, more expansive now, remain essentially the same that we rejected in our opinion in 1984, and the same as has been twice argued to the Supreme Court of the United States on two applications for writ of certiorari and on both occasions rejected by that Court.

Petitioner insists that he is entitled to a new trial because the suppression of the information conveyed to the Louisiana authorities in 1980 has been characterized as a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The prosecution usually commits a *Brady* violation by suppressing evidence favorable to the defendant that deprives the defendant of a fair trial because of the materiality of the evidence upon the issue being tried. A defendant deprived of a fair trial is entitled to a new trial. In the present case, Monroe's trial and sentence were not impugned; the only constitutional problem was the failure of the state court to fully review the newly discovered matter in deciding upon post-trial relief. That failure could be fully rectified, as it has been, by consideration of the grounds for new trial in the light of the "suppressed" information and all evidence to which it might lead. A short answer to the lengthy argument of petitioner is that the constitutional flaw in Monroe's case has been remedied without a new trial. In *Brady* itself the defendant obtained no new trial on the issue of his guilt but only upon that aspect of the proceedings wherein he had been prejudiced by the withheld information.

The application for certificate of probable cause and the application for stay of execution are DENIED.

---

1. The following exchange occurred on direct examination of Theodise Collins:

    Q. Theodise, who killed your mother?
    A. Ronald Monroe.
    Q. Is there any doubt about that?
    A. None.
    Q. Who stabbed you?
    A. Ronald Monroe.
    Q. Did George Stinson, in any way, intimidate you at all into putting the blame for your mother's murder on Ronald Monroe?
    A. No.