**UNITED STATES of America ex rel. Dwayne COULTER, Petitioner,**

v.

**Richard GRAMLEY and Roland W. Burris, Respondent.**

No. 93 C 0732.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 15, 1996.

---

Christine R. Norgle, Staci Filipi & Kakacek, Chicago, IL, for Petitioner.

Michael A. Hurst, Terence Madsen, Illinois Attorney General's Office, Chicago, IL, for Respondents.

***MEMORANDUM OPINION AND ORDER***

CONLON, District Judge.

Dwayne Coulter ("Coulter") petitions for habeas corpus pursuant to 28 U.S.C. § 2254. Following a jury trial in state court, Coulter was convicted of first degree murder of a police officer and conspiracy to murder another man. Coulter was sentenced to natural life imprisonment. The Illinois appellate court affirmed the conviction, and the Illinois Supreme Court denied Coulter's petition for leave to appeal. Coulter's petition for habeas corpus was dismissed with prejudice on procedural grounds by this court. The Seventh Circuit reversed and remanded. The State of Illinois ("the State") opposes Coulter's petition.

### BACKGROUND

The following facts are drawn from the Seventh Circuit's opinion in this case. Dwayne Coulter, an African–American, was convicted by an Illinois jury of first degree

murder of Michael Ridges, a white police officer, and conspiracy to murder another man. During the jury selection process for Coulter's trial, the State used nine of its ten peremptory challenges to exclude African–Americans from the jury. In his petition under 28 U.S.C. § 2254, Coulter claims that the State's exercise of its challenges violated *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

The jury at Coulter's trial included three African–Americans and two African–American alternates. Coulter moved for a mistrial because the State had exercised its first six peremptory challenges to exclude African–Americans. The trial court denied this motion and two subsequent motions aimed at the State's alleged discriminatory action. The jury convicted Coulter, and he was sentenced to imprisonment for natural life. Coulter appealed his conviction to the Illinois appellate court, claiming a violation of *Batson* as one ground for relief.

The state appellate court remanded the case for clarification of the record concerning jury selection. On remand, the trial court decided not to hold a hearing. Instead, it proceeded exclusively on the basis of written arguments. Without a written opinion, the court held that Coulter failed to establish a *prima facie* case under *Batson.* The court reached this conclusion before Coulter had an opportunity to respond to the State's reasons for the strikes. Coulter then filed a motion to reconsider in which he responded to the State's arguments. The trial court denied Coulter's motion.

The Illinois appellate court found that the trial court's procedure on remand had been "less than ideal," and that the record indicated "open hostility" toward Coulter. *People v. Coulter*, 230 Ill.App.3d 209, 171 Ill.Dec. 643, 651, 594 N.E.2d 1163, 1171 (1992). Nonetheless, the appellate court concluded that the trial court's hostility did not amount to prejudgment of the issue. *Id.* 171 Ill.Dec. at 652, 594 N.E.2d at 1172. The appellate court did find, however, that Coulter had established a *prima facie* case of discrimination. The appellate court then addressed the State's reasons for its strikes juror by juror, *id.* at 654–656, 594 N.E.2d at 1174–1176, but

found that the State had presented reasonably specific, legitimate, and race-neutral explanations for its strikes. *Id.* at 656, 594 N.E.2d at 1176.

Following the appellate court's decision, Coulter filed a timely motion for leave to appeal to the Illinois Supreme Court. In that motion, Coulter claimed that the State's explanations for its strikes were pretextual. The Illinois Supreme Court denied the motion. This court rejected Coulter's *Batson* argument on procedural grounds. The Seventh Circuit reversed and remanded for further proceedings on the merits of this issue. *Coulter v. Gramley*, 93 F.3d 394, 397 (7th Cir.1996).

### DISCUSSION

## I. GENERAL HABEAS CORPUS STANDARDS

Coulter must clear two procedural hurdles before the court can address the merits of his petition for habeas corpus: exhaustion of remedies and procedural default. *Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir.1995); *Jones v. Washington*, 15 F.3d 671, 674 (7th Cir.1994), *cert. denied*, —— U.S. ——, 114 S.Ct. 2753, 129 L.Ed.2d 870 (1994). To satisfy the exhaustion requirement, Coulter must have exhausted all state appellate procedures. *Id.; Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir.1991), *cert. denied sub nom., Farrell v. McGinnis*, 502 U.S. 944, 112 S.Ct. 387, 116 L.Ed.2d 337 (1991). To avoid procedural default, Coulter must have fairly and properly presented each issue to a state court on either direct appeal or post-conviction review. *Rodriguez*, 63 F.3d at 555; *Jones*, 15 F.3d at 674.

If Coulter's claims survive both procedural barriers, Coulter has the burden of showing that either: (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" 28 U.S.C. 2254(d)(1), or (2) the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding." 28 U.S.C. 2254(d)(2).[1]

## II. THE *BATSON* CLAIM

The Seventh Circuit has already found that Coulter's petition was not procedurally barred as to the *Batson* claim. *Coulter*, 93 F.3d at 397. Coulter does not challenge the factual record. As for the merits of the claim, Coulter argues that the prosecution's use of peremptory challenges and the content of the prosecution's *voir dire* questions prove that the State discriminated against African–American jurors.

For this court to grant habeas relief, Coulter must point to an authoritative United States Supreme Court decision in support of his position, show that the state court applied a Supreme Court doctrine unreasonably to the facts of his case, or demonstrate that the state court's decision relied on an unreasonable reading of the facts in light of the evidence presented. 28 U.S.C. 2254(d). There is no Supreme Court decision addressing the specific prosecutorial behavior presented here. Thus, Coulter must show that the state court's decision involved an unreasonable application of United States Supreme Court doctrine or that the state court relied on an unreasonable determination of the facts.

■ The United States Supreme Court has applied a three-step analysis when considering allegations of racially-based peremptory challenges. *Batson*, 476 U.S. at 96, 106 S.Ct. at 1722–23. First, the Court requires the petitioner to establish a *prima facie* case. To meet this requirement, Coulter must show that (a) he is a member of a cognizable racial group; (b) the prosecutor exercised peremptory challenges to remove members of that racial group from the venire panel; and (c) the circumstances raise an inference that the prosecutor exercised challenges in a discriminatory manner. *Id.* The court should consider such factors as a pattern of strikes against members of the racial group, and the questions the prosecutor asked in *voir dire* examination. *Id.* at 97, 106 S.Ct. at 1723.

■ Once a defendant establishes a *prima facie* case, the burden shifts to the State to present a race-neutral explanation for the challenges in question. *Id.* The explanation need not provide cause, but it must be more than the mere assertion of a nondiscriminatory motive. *Id.* at 98 n. 20, 106 S.Ct. at 1724 n. 20. If this requirement is met, the court must decide whether the defendant has proved purposeful discrimination. *Id.* at 98, 106 S.Ct. at 1723–24.

■ The state appellate court concluded that Coulter established a *prima facie* case. *People v. Coulter*, 171 Ill.Dec. at 653, 594 N.E.2d at 1173. Coulter is African–American, a cognizable racial group under the Fourteenth Amendment. Second, the prosecutor used nine out of ten peremptory challenges to exclude African–Americans, even though only sixteen out of fifty-five members of the venire were African–American. The prosecutor's challenges of African–Americans (90%) were thus exceptionally disproportionate to the number of African–Americans on the panel (29%). This fact by itself raises an inference of discriminatory use of peremptory challenges. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. Accordingly, the state appellate court correctly concluded that Coulter established a *prima facie* case.

The state appellate court then found that the prosecution had provided race-neutral reasons for its challenges. The state appellate court went through each of the prosecution's challenges and noted the existence of a race-neutral explanation for each challenge. The state appellate court reasonably concluded that these explanations satisfied the State's burden.

The state appellate court then examined whether Coulter sustained his burden of proving purposeful discrimination in light of the entire record. The appellate court held that the trial court's conclusion that the prosecution's explanations were not pretextual was reasonable and not clearly erroneous. *Coulter*, 171 Ill.Dec. at 656, 594 N.E.2d at 1176. Consequently, the appellate court af-

---

1. These provisions of the statute apply even though Coulter was convicted and filed his habe-

as petition before the provision's enactment. *Lindh v. Murphy*, 96 F.3d 856 (7th Cir.1996).

firmed the trial court's denial of Coulter's *Batson* challenge.

This court must give great weight to the factual findings of the state trial court. *Batson*, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21. Nonetheless, the state trial court's findings on this issue can be set aside if they were unreasonable given the evidence presented. 28 U.S.C. 2254(d)(2). The trial court's factual determination in this case was indeed unreasonable. Coulter has shown that only sixteen of fifty-five people in the venire were African–American and that nine out of ten of the prosecution's peremptory challenges were directed at African–Americans. R. 1306–7. This fact by itself is compelling evidence of discrimination. As the Supreme Court stated in *Batson*, "discriminatory impact 'may for all practical purposes demonstrate unconstitutionality because in various circumstances the discrimination is very difficult to explain on non-racial grounds.' For example, 'total or seriously disproportionate exclusion of [African–Americans] from jury venires ... is itself such an unequal application of the law ... as to show intentional discrimination.'" *Batson*, 476 U.S. at 93, 106 S.Ct. at 1721 (quoting *Washington v. Davis*, 426 U.S. 229, 241–42, 96 S.Ct. at 2048–49, 48 L.Ed.2d 597 (1976); *Akins v. Texas*, 325 U.S. 398, 404, 65 S.Ct. 1276, 1279, 89 L.Ed. 1692 (1945)).

In addition to this compelling evidence, the prosecution's *voir dire* questions suggest discriminatory intent. For example, the prosecution claims to have excluded prospective African–American juror Marcia Adams ("Adams"), a licensed practical nurse, because medical testimony on Coulter's insanity defense was to be presented. R. 1215. However, there was no evidence that Adams had any particular knowledge about mental health issues. Moreover, the prosecution did not challenge a non-minority juror whose wife was a nurse, R. 1355, or a non-minority juror who had contact with psychiatrists because of her father's severe depression. R. 1253–4. The prosecution also challenged prospective African–American juror Melvin Ingess ("Ingess"). The prosecution asked Ingess whether his children had more than one mother. R. 1288. Ingess replied that he

had fathered children by two different women. *Id.* The prosecution subsequently used this answer as one basis for challenging Ingess. R. 1305. However, the prosecution did not ask any of the non-minority jurors about the paternity of their children. These explanations were "an obvious mask for a race-based challenge." *Splunge v. Clark*, 960 F.2d 705, 709 (7th Cir.1992).

A trial court's determination that a prosecutor had valid race-neutral reasons for using peremptory strikes against African–Americans is generally accorded great deference. *United States v. Hunter*, 86 F.3d 679, 682 (7th Cir.1996). However, in addition to the reasons above, this court should not defer to the state trial court's conclusion of non-discriminatory intent because the trial judge himself recognized the unconstitutionality of the state's actions. The judge commented that this case "is a real winner as far as any *Batson* motions [are] concerned." R. 1223–4. Later, the judge called the prosecution's use of peremptory challenges "a disgrace." R. 1366. It is clear the trial judge did not find the reasons given for the strikes credible. The judge's failure to take any action is difficult to understand. Accordingly, Coulter has provided convincing evidence that the state court's factual determination was unreasonable.

The State points to *McCain v. Gramley*, 96 F.3d 288 (7th Cir.1996), to support its claim that the state appellate and trial courts were correct or, at least, reasonable. That case, however, presented fewer probative facts than the case at hand. In *McCain*, only two peremptory challenges out of five were used against African–Americans. *Id.* at 291. Here, nine out of ten challenges were directed against African–Americans. Moreover, the State in that case gave plausible explanations for their strikes. For example, the State had permissibly relied on a prospective juror's employment status and failure to answer questions during *voir dire*. *Id.* at 293.

Here, the prosecution's explanations with respect to Ingess and Adams are patently implausible. With respect to Adams, the prosecution did not challenge non-minority prospective jurors who had exposure to the mental health profession, nor did it establish

that Adams had any connection whatsoever to the mental health profession. With respect to Ingess, the prosecution never asked non-minority prospective jurors if their children were born to the same parents, yet the prosecution used that question as a basis for challenging Ingess. While the prosecution claimed that it also challenged Ingess because of his sporadic employment record, the racially selective use of the paternity question strongly suggests that a discriminatory motive existed. *Splunge* 960 F.2d at 707–09. Accordingly, *McCain* does not support the State's position. In fact, if *McCain* is relevant at all to this case, it actually supports Coulter's position. The Seventh Circuit noted that, "[w]here a party uses a significant number of its total strikes on members of a certain racial group ... one might infer that the party was concerned about the racial make-up of the jury and acted in a discriminatory fashion." *McCain,* 96 F.3d at 292 (citation omitted).

 One piece of evidence that appears to favor the State is that the final jury consisted of three African–Americans (25%), a number roughly proportionate to the percentage of African–Americans on the total venire panel (29%). However, this evidence is hardly persuasive. Based on the circumstances, it appears that the only reason three African–Americans made it onto the jury is that the prosecution only had ten peremptory challenges. A *Batson* challenge cannot fail simply because the actual jury contained roughly the same percentage of African–Americans as the venire panel. Otherwise, the State could avoid *Batson*'s requirement that the State provide a non-discriminatory explanation for its challenges under circumstances strongly suggesting racial discrimination. *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723.

One piece... The state appellate and trial courts applied the correct constitutional standard in this case, but their failure to find discriminatory state action was unreasonable. 28 U.S.C. § 2254(d)(2). The trial court is entitled to great discretion because the trial judge is in the best position to make credibility determinations. *Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21; *Hunter,* 86 F.3d at 683. However, that premise is substantially undermined in this case because the trial judge's own comments about the prosecution's peremptory challenges suggests discriminatory conduct. Moreover, the prosecution's implausible explanations with respect to two prospective jurors and the State's almost exclusive use of peremptory challenges to exclude African–Americans presents overwhelming evidence of discriminatory state action. Accordingly, the trial court's determination of the facts was unreasonable in light of the evidence presented.

The evidence presented here demonstrates that the prosecution discriminated against African–Americans when it chose jurors for Coulter's trial. This type of discrimination "causes deadly serious harm to the excluded citizen, the defendant, and our system of justice as a whole." *Splunge,* 960 F.2d at 709 (citing *Batson,* 476 U.S. at 87, 106 S.Ct. at 1718). Such conduct cannot be tolerated.

### *CONCLUSION*

Dwayne Coulter's petition for a writ of habeas corpus is granted. Execution of the writ is stayed on the condition that the State of Illinois grants Coulter a new trial within a reasonable time, not to exceed 120 days.