THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DWAYNE COULTER, Defendant-Appellant.

First District (6th Division)     No. 1—99—0432

Opinion filed March 30, 2001.—Rehearing denied May 18, 2001.

CAMPBELL, P.J., specially concurring in part and dissenting in part.

Michael J. Pelletier and Debra R. Salinger, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Barbara L. Jones, William D. Carroll, and Judy L. DeAngelis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GALLAGHER delivered the opinion of the court:

In 1987, a jury convicted defendant Dwayne Coulter, an African-American, of first degree murder in the death of Michael Ridges, a white Prospect Heights police officer, and of conspiring with three other men to kill Robert Fischer. Defendant was sentenced to natural life imprisonment. The instant action follows a previous appeal in which this court held that under *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), defendant had established a *prima facie* case of racial discrimination in the selection of the jury that convicted him. However, this court affirmed defendant's conviction and sentence because the State offered race-neutral and legitimate explanations for using its peremptory challenges to strike those

potential jurors. *People v. Coulter*, 230 Ill. App. 3d 209, 229, 594 N.E.2d 1163, 1176 (1992) (*Coulter I*). Defendant filed a petition in federal district court for a writ of *habeas corpus*. That court found the State's explanations as to two prospective jurors "implausible" and that the State improperly used its peremptory challenges almost entirely to strike African-American jurors. *United States ex rel. Coulter v. Gramley*, 945 F. Supp. 1138, 1143 (N.D. Ill. 1996). The Seventh Circuit Court of Appeals modified the district court's opinion and remanded to the state trial court for a new *Batson* hearing. *Coulter v. Gilmore*, 155 F.3d 912, 922 (7th Cir. 1998).

Following such a hearing, the trial court found that no *Batson* violation occurred. In this appeal, defendant contends that in the hearing the State failed to meet its burden of demonstrating race-neutral explanations for its peremptory challenges and that the trial court failed to comply with the Seventh Circuit's instructions in *Coulter v. Gilmore*, among other alleged errors. Defendant also contends in a supplemental brief that the imposition of a life sentence upon the trial judge's finding of an aggravating factor violates *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). Because we find that the trial court conducted a sufficient review of defendant's *Batson* claims and we find defendant's other contentions to be without merit, we affirm defendant's convictions and sentence.

The following facts are taken from the record on appeal, our opinion in *Coulter I* and the subsequent federal court proceedings. Prior to jury selection for defendant's trial, the court ordered that in light of the United States Supreme Court's then-recent decision in *Batson*, the prosecution and the defense would be required to offer reasons *in camera* for their peremptory challenges as each challenge was sought. Of the 10 peremptory challenges that the State exercised, 9 were used to excuse African-American venirepersons. The relevant *voir dire* testimony of those nine individuals is detailed below. Eight whites, one Hispanic and three African-Americans served on defendant's jury. Two African-Americans were alternate jurors.

African-American Venirepersons Excused by the State's Peremptory Challenges

April Rhem was single and worked for two months at a temporary employment agency. Before that, she was an accounting clerk at Kraft Foods for seven months, a sales clerk at Marshall Field's for four months, and an office worker at Roosevelt University for three months. She attended Roosevelt for the previous three years as a finance major. Because it was possible that defendant would invoke an insanity

defense, Rhem was asked if any family member had been treated by a psychiatrist, psychologist or mental health worker or if any friends or relatives were employed in that field. Rhem replied no to both questions. The State challenged her, stating that she had four different jobs in the last year. The defense argued that she was a student and should not be excluded for her employment record.

Marcina Adams stated that she was a licensed practical nurse and worked at Westshire Retirement Center. None of her family members had been treated for mental health problems, and she did not have friends or relatives employed in that field. The State contended she should be excused because of the medical testimony involved should an insanity defense be mounted.

Teresa Brantley stated that she was unemployed for the last 10 years, and before that, had worked at the post office for three months and at the Clock Factory for a month. The State successfully challenged her based upon her record of unemployment.

Jeanell Hicks stated that she was single and had worked at Mickey's Linen for three months. She previously worked for Oxford Speakers for six years and at Brown Motors for five years. Hicks stated that her mother's home was burglarized 25 years ago. She said none of her family members or friends had been treated for a mental health condition and no friends or relatives worked in that field. The State initially challenged Hicks because she indicated on her response card that she had been involved in an auto accident with injuries. The trial court asked, "What if she doesn't have a pending lawsuit?" The State responded, "Well, if not, she seemed very timid and was real hesitant in answering your questions, and we think that that's enough to exercise our peremptory challenge on." Subsequent questioning of Hicks revealed that she did not have a pending case.

Melvin Igess stated that he had been unemployed for about a year after working at Able Inventory for seven or eight months. Before that, he worked at a gas station for about a year. Igess had fathered one child with one woman and two children with another woman. The State successfully excused him, stating that he had "three children by two different women" and had been unemployed for about a year.

Melanie Pinkins stated that she had been a salesperson at a retail store for about three years. When asked where she lived, Pinkins said she lived with her mother, who worked at Mercy Hospital as a social worker for older patients. The State moved to excuse Pinkins because a doctor who was affiliated with Mercy Hospital earlier in his career had testified at a fitness hearing that defendant was fit to stand trial. When the defense asked that Pinkins be questioned as to what years her mother worked at Mercy, the court replied that Pinkins was excused.

Anthony Powe stated that his brother had been convicted of armed robbery several years earlier. In a sidebar, the State told the court that Powe previously had been charged with a crime.

Kevin Archibald stated that while attending Southern Louisiana University, school officials contended that he owed money to the school. Archibald stated that the school took him to court in a civil case but that he was never charged with a crime. In a sidebar, the State asserted that he had been charged with theft in Illinois.

Edward Terry stated that he had "some problems" with the death penalty and "wouldn't want to have to make a decision" but thought he "could follow the law." The State challenged him based upon those statements.

Procedural History

Following defendant's conviction and sentencing, a lengthy procedural history ensued that has resulted in the present appeal. After defendant first appealed his conviction in 1990, this court remanded to the trial court for clarification of the record concerning jury selection and for any necessary further proceedings pursuant to *People v. Hope*, 137 Ill. 2d 430, 560 N.E.2d 849 (1990), *vacated, Hope v. Illinois*, 501 U.S. 1202, 115 L. Ed. 2d 966, 111 S. Ct. 2792 (1991). This court retained jurisdiction over the appeal pending completion of that supplemental hearing and argument on the *Batson* issue, in accordance with *People v. Garrett*, 139 Ill. 2d 189, 194-95, 564 N.E.2d 784, 787 (1990). On remand, after hearing arguments from the parties, the trial court stated that defendant had not established a *prima facie* case of discrimination, and even had defendant done so, the State offered racially neutral reasons for its peremptory challenges. Defendant filed a motion to reconsider in which defense counsel responded to the reasons the State gave for its challenges. That motion was denied.

This court then reviewed those proceedings and found that defendant had set forth a *prima facie* case of discrimination. *Coulter I*, 230 Ill. App. 3d at 224, 594 N.E.2d at 1173. However, the court reviewed the reasons the State offered in the original *voir dire* in challenging nine of the African-American venirepersons. The court concluded that, based upon the record, defendant had failed to prove that the trial court's determination that no intentional discrimination occurred was clearly erroneous. *Coulter I*, 230 Ill. App. 3d at 229, 594 N.E.2d at 1176. The court affirmed defendant's conviction and sentence. *Coulter I*, 230 Ill. App. 3d at 230, 594 N.E.2d at 1177.

After the Illinois Supreme Court denied his petition for leave to appeal, defendant filed a *pro se* petition for a writ of *habeas corpus* in the United States District Court for the Northern District of Illinois.

The district court initially denied defendant's petition on procedural grounds. However, the Seventh Circuit reversed that decision and remanded for consideration of the merits of defendant's *Batson* claim. *Coulter v. Gramley*, 93 F.3d 394, 397 (7th Cir. 1996).

On remand, the district court found that the evidence presented to the trial court established that the State discriminated against African-Americans in exercising its peremptory challenges. *Coulter v. Gramley*, 945 F. Supp. at 1143. The district court specifically noted that 9 of the 10 challenges used by the State were directed at African-American venirepersons, stating that "[t]his fact by itself is compelling evidence of discrimination." *Coulter v. Gramley*, 945 F. Supp. at 1142. The court also stated that the State's *voir dire* questions suggested discriminatory intent and that the almost-exclusive use of challenges against African-Americans, coupled with the prosecution's "implausible" explanations regarding Igess and Adams, represented "overwhelming evidence of discriminatory state action." *Coulter v. Gramley*, 945 F. Supp. at 1143.

■ The Seventh Circuit affirmed the district court's opinion but ordered the state trial court to hold a new hearing on defendant's *Batson* claim.[1] *Coulter v. Gilmore*, 155 F.3d at 922. The court reviewed the three-part *Batson* analysis, which starts with a defendant's establishment of a *prima facie* case of purposeful discrimination. To meet that *prima facie* case, a defendant must show that (1) he or she was a member of a cognizable racial group; (2) the prosecutor exercised peremptory challenges to remove members of the defendant's race from the venire; and (3) sufficient facts and circumstances existed to raise an inference that the prosecution used the peremptory challenges to exclude venire members on the basis of race. *Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1723. If the defendant meets those requirements and establishes a *prima facie* case, the burden shifts to the government to articulate race-neutral justifications for striking the venirepersons at issue; those reasons must be clear, reasonably specific and related to the case at bar. *Batson*, 476 U.S. at 97-98 & n.20, 90 L. Ed. 2d at 88 & n.20, 106 S. Ct. at 1723-24 & n.20. If the government meets that burden, the trial court must determine if the defendant established purposeful discrimination. *Batson*, 476 U.S. at 98, 90 L. Ed. 2d at 88-89, 106 S. Ct. at 1724.

The Seventh Circuit found that the trial judge's procedure of hav-

---

[1]In *Coulter v. Gilmore*, the federal appeals court noted that the trial court proceeding on the remand that immediately preceded *Coulter I* was supplemented by two additional proceedings for which transcripts were unavailable. *Coulter v. Gilmore*, 155 F.3d at 915.

ing the prosecution and defense each compile a list of challenges, as opposed to allowing each side to exercise its challenges unless an objection was raised, circumvented the stage at which the defendant could object to the State's use of peremptory challenges. *Coulter v. Gilmore*, 155 F.3d at 918. Therefore, defendant was not provided the proper forum to establish a *prima facie* case of purposeful discrimination based upon race. *Coulter v. Gilmore*, 155 F.3d at 918. The Seventh Circuit agreed with this court's finding in *Coulter I* that defendant established a *prima facie* case of discrimination. *Coulter v. Gilmore*, 155 F.3d at 919. Upon such a *prima facie* showing, the court noted, *Batson* shifted the burden to the State to produce a legitimate, race-neutral explanation for challenging each African-American juror. The court stated that venire members Powe, Archibald and Terry were excused for "plainly race-neutral and legitimate" reasons (Powe and Archibald's failure to disclose previous criminal charges against them and Terry's unease with the death penalty). *Coulter v. Gilmore*, 155 F.3d at 919-20. The court found the challenges against Brantley (10 successive years of unemployment), Adams (training as nurse could affect weighing of insanity evidence), Pinkins (mother worked at same hospital as potential defense witness, although no testimony that tenures coincided) and Rhem (attended night school and held four different jobs in the previous year) to be race-neutral and "plausibly legitimate." *Coulter v. Gilmore*, 155 F.3d at 919-20.

The Seventh Circuit expressed skepticism about the State's explanations for striking Hicks ("timid and hesitant" in answering the trial judge's *voir dire* questions) and Igess (had three children by two different women and had been unemployed for about a year). *Coulter v. Gilmore*, 155 F.3d at 919-20. However, the court stated that the trial court had prematurely considered the justifications offered by the State. The court noted that not until the third stage of *Batson*, when the trial court determines whether a defendant has carried his burden of proving intentional discrimination, are the justifications behind the challenges to be examined and found to be either pretextual or legitimate. *Coulter v. Gilmore*, 155 F.3d at 920. The court recognized its limited ability to review the state court's findings as to whether the prosecution's reasons were pretextual, noting that it was "simply impossible for us to tell from the cold record."[2] *Coulter v. Gilmore*, 155 F.3d at 920.

---

[2]Because defendant's *habeas* petition was filed in 1993, the court applied the standard of review that was utilized before the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) (28 U.S.C. § 2254 (Supp. 1996)). Under pre-AEDPA law, a factual determination made in a hear-

The Seventh Circuit stated that the trial court failed to consider the totality of the circumstances and therefore did not assess the similarities between nonminority venire members who were not struck and minority venire members who were excused. *Coulter v. Gilmore*, 155 F.3d at 921. Specifically, the court mentioned white venirepersons whom the court contended were similarly situated to Pinkins (who had been challenged because her mother had worked at the same hospital as a potential defense witness) and Adams (challenged because her training as a nurse could affect weighing of the insanity evidence) who were not excused, even though one nonstricken venire member's wife was a registered nurse and another venire member's father had been treated for severe depression. *Coulter v. Gilmore*, 155 F.3d at 921. The Seventh Circuit ordered that defendant would be released unless within 120 days the state trial court held a new *Batson* hearing "at which the proper methodology for evaluating his claim is followed," specifically that "in addition to reviewing the reasons given for striking each individual prospective juror, [the trial court] considers the totality of the circumstances and compares the prosecutor's strikes against African-Americans against its treatment of similarly situated Caucasians." *Coulter v. Gilmore*, 155 F.3d at 922.

The Trial Court's *Batson* Hearing on Remand

In December 1998, the trial court reviewed defendant's *Batson* claims. (The judge presiding over that hearing did not preside at defendant's trial.) The State apprised the trial court of the reasons the prosecution had offered the trial judge for excusing the nine African-American venire members in question. The trial court noted the Seventh Circuit's observations in *Coulter v. Gilmore* that the proffered reasons for challenging Hicks and Igess were questionable. The judge stated that she would "consider all of the reasons for all of the nine challenged jurors by the State under a totality of the circumstances test in determining the credibility of those reasons given," also noting that she had read the transcripts of the original jury selection as well as the opinions in *Coulter I* and *Coulter v. Gilmore*.

The court first noted the racial breakdown of the venire as a whole, compared with the races of those actually selected as jurors, and stated that of the 55-member venire, 16 members, or approximately 29%,

ing on the merits was presumed correct if it was fairly supported by the record considered as a whole, and a petitioner could rebut that presumption by "convincing evidence." 28 U.S.C. § 2254 (1994). Therefore, the court gave the trial court's factual findings a presumption of correctness, subject to rebuttal. *Coulter v. Gilmore*, 155 F.3d at 917-18.

were African-American. Three African-Americans served on the twelve-person jury, with two African-Americans selected as alternates. The court calculated that 35% of the jury (including the alternates) was African-American, a figure that the court noted was "certainly much higher" than the number of African-Americans in the venire or "much higher than the percentage of blacks in the Cook County area."

The court also noted that while 9 of the 10 challenges exercised by the State were used to strike African-American venire members, the defense used 13 of its challenges to excuse whites. While the court found that statistic relevant under *Georgia v. McCollum*, 505 U.S. 42, 59, 120 L. Ed. 2d 33, 51, 112 S. Ct. 2348, 2359 (1992) (holding that criminal defendants cannot engage in discrimination on the grounds of race in exercising their peremptory challenges, but must articulate racially neutral explanations), the court stated that it did not consider the defense's use of its challenges to be dispositive under *McCollum*, but that it was only noted "for the purpose of showing the level of competence of the attorneys on both sides" and to show that the State and defense were "merely advocating their respective positions."

The court stated that the excusal of Hicks based upon her demeanor was legitimate and race-neutral because it was foreseeable that the prosecution "would want as a juror someone who was strong, stable *** sure of their convictions and willing to follow them." Regarding Igess, the court stated that although Igess had been asked if his children had different mothers, the prosecution sought to exclude him because he had been unemployed for almost a year and before that "had several jobs *** each of which only lasted for a few months." The court said that the State might have sought a "more stable, working" person as a juror. The court noted that during jury selection, the defense made no attempts to rebut those stated reasons on the record.

In addition, the judge commented on the credibility of the two prosecutors at defendant's trial, one of whom she knew personally. The court found that, based upon the totality of the circumstances, the reasons articulated for the nine African-American jurors excused by the State were race-neutral, legitimate, credible and not pretextual.

Analysis

■ We initially address the State's motion to dismiss defendant's appeal. The State contends that only the Seventh Circuit, and not this court, can determine whether the state trial court followed the Seventh Circuit's instructions in *Coulter v. Gilmore*. The State fails to cite case law in support of this argument. As defendant notes, Illinois courts of appeal previously have reviewed whether a circuit court decision has complied with a directive from a federal court. See, *e.g.*, *People v. Em-*

*erson*, 189 Ill. 2d 436, 464-67, 727 N.E.2d 302, 319-20 (2000) (holding that trial court's commencement of sentencing proceedings within 120-day period mandated by Seventh Circuit was "reasonable interpretation of the federal district court order"). The State has failed to persuade this court that it cannot review the actions of the trial court in this case. Therefore, the motion to dismiss defendant's appeal is denied.

On appeal, defendant contends that the State failed to meet its burden of showing that legitimate and race-neutral explanations existed for each peremptory challenge. As further evidence of discrimination, defendant refers to the racial makeup of the venire and the jury and the State's consistent use of its challenges against African-Americans. Defendant also contends that the trial court improperly focused on the defense's exercise of peremptory challenges and that the judge relied on her personal opinion of the prosecutors' integrity. Defendant seeks a new trial or, in the alternative, that this court remand the case to the trial court for another *Batson* hearing.

■ Defendant asserts that "in direct contravention to the Seventh Circuit's directive," the trial court failed to fully scrutinize the State's challenges to the excused African-American venirepersons or compare them with their nonminority counterparts who were not challenged. We note that it is not the task of this court to analyze the trial court's actions in the wake of the Seventh Circuit's opinion in *Coulter v. Gilmore*. The Seventh Circuit exercises no appellate jurisdiction over state courts, and therefore the decision of that court is not conclusive to our analysis. See *People v. Eyler*, 133 Ill. 2d 173, 225, 549 N.E.2d 268, 291 (1989). While the supreme court notes in *Eyler* that a decision of a federal court may become the "law of the case," and may therefore be binding upon state courts in subsequent proceedings (*Eyler*, 133 Ill. 2d at 225, 549 N.E.2d at 291), the instant case was not remanded with substantive factual findings by the Seventh Circuit, but instead with the procedural direction that another *Batson* hearing be held with a "totality of the circumstances" analysis performed. We therefore reject at the outset defendant's assertions throughout his appeal that the trial court was required to state certain facts on the record or perform an analysis as mandated by the Seventh Circuit.

■ The role of this court is to determine whether the trial court properly reviewed defendant's *Batson* claims. As discussed previously, in order to establish a *prima facie* of purposeful discrimination in jury selection under *Batson*, a defendant must first show that (1) he or she was a member of a cognizable racial group; (2) the prosecutor exercised peremptory challenges to remove members of defendant's race from the venire; and (3) sufficient facts and circumstances existed to raise

an inference that the prosecution used the peremptory challenges to exclude venire members on the basis of race. *Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1723. If a defendant meets those requirements, the burden shifts to the State to articulate race-neutral justifications for striking the venirepersons at issue; those reasons must be clear, reasonably specific and related to the case at bar. *Batson*, 476 U.S. at 97-98 & n.20, 90 L. Ed. 2d at 88 & n.20, 106 S. Ct. at 1723-24 & n.20. While such a justification "need not rise to the level justifying exercise of a challenge for cause," the State must not offer a challenge based merely on the assumption that a particular juror would be "partial to the defendant because of their shared race." *Batson*, 476 U.S. at 97-98, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723; see also *Hope*, 137 Ill. 2d at 454, 560 N.E.2d at 859-60. If the State offers specific and race-neutral justifications, the third stage of *Batson* arises, in which the trial court determines if the defendant has established purposeful discrimination. In *Batson*, the Supreme Court noted that since the trial judge's findings at that stage rest upon credibility determinations, "a reviewing court ordinarily should give those findings great deference." *Batson*, 476 U.S. at 98 n.21, 90 L. Ed. 2d at 89 n.21, 106 S. Ct. at 1724 n.21. The initial determination of the legitimacy of the State's offered explanation for a peremptory challenge rests with the trial court and involves an assessment of credibility to which a reviewing court defers unless against the manifest weight of the evidence. *People v. Britt*, 265 Ill. App. 3d 129, 134-35, 638 N.E.2d 282, 287 (1994). The trial court's factual findings will be set aside only if clearly erroneous. *People v. Hope*, 147 Ill. 2d 315, 321, 589 N.E.2d 503, 506 (1992).

Defendant contends that the State failed to meet its burden of showing that legitimate and race-neutral explanations existed for each peremptory challenge. Defendant argues that the reasons the State offered for striking Rhem, Hicks, Pinkins, Igess, Adams and Brantley were pretextual and that the latter four venire members were similarly situated to nonminority venirepersons whom the State did not excuse.[3] Defendant's contentions that two nonminority venire members were similarly situated to Pinkins are raised for the first time in this appeal. Rulings on issues that could have been raised in the original proceedings, but were not, are deemed waived. *People v. Enoch*, 146 Ill. 2d 44, 50, 585 N.E.2d 115, 118 (1991). Therefore, no factual basis existed for the trial court to perform a "similarly situated analysis" as to Pinkins. In addition, although the Seventh Circuit in *Coulter v. Gil-*

---

[3]The excusal of African-American venire members Powe, Archibald and Terry is not at issue in this appeal.

*more* pointed out white venire members that it claimed were similarly situated to Adams, the trial court on remand was not bound to abide by that court's views in engaging in its "totality of the circumstances" analysis. Regarding Igess and Hicks, the trial judge reviewed on the record the reasons that the State offered for striking them and found them to be not pretextual, and as to Rhem and Brantley, the trial court's failure to specifically mention their cases is not fatal.

Defendant asserts that at the third stage of a *Batson* hearing, the trial judge must make specific findings of fact regarding the State's explanations for excluding a venire member. He argues that because the court did not list and review on the record the reasons pertaining to each excluded African-American venire member at issue, a remand is required. Defendant cites *People v. Harris*, 129 Ill. 2d 123, 187, 544 N.E.2d 357, 385 (1989), in which the supreme court, when remanding the case to the trial court for a *Batson* hearing, instructed the court "to make appropriate findings of fact and conclusions of law." *Harris*, 129 Ill. 2d at 187, 544 N.E.2d at 385. Such a mandate did not occur in this case, and even if it did, such an exhaustive finding is not required in all cases. In *People v. Fair*, 159 Ill. 2d 51, 76, 636 N.E.2d 455, 469 (1994), the supreme court rejected a defendant's argument that the trial judge erred by failing to make detailed factual findings for each challenged *Batson* strike, instead stating that the judge's general assertions were "sufficiently specific."

■ In this case, the trial judge listened to the State reiterate its reasons for striking each African-American venire member. Noting that the Seventh Circuit's opinion specifically mentioned Hicks and Igess, the judge stated that she would "consider all of the reasons for all of the nine challenged jurors by the State under a totality of the circumstances test." The trial judge summarized her findings by noting a number of factors that she considered in assessing defendant's claims. We find nothing deficient in the manner in which the trial court conducted defendant's *Batson* hearing on remand, under a "totality of the circumstances" evaluation.

■ Defendant also argues that the trial court failed to take into account that the State used all but one of its peremptory challenges to strike African-American venirepersons. As previously discussed, the trial court indicated that the relevant circumstances were considered, and the judge's failure to list those reasons explicitly is not fatal. A "pattern of strikes" against venire members of the same race as defendant is a relevant circumstance in assessing whether a defendant has established a *prima facie* case of discrimination. *Coulter I*, 230 Ill. App. 3d at 222-23, 594 N.E.2d at 1172. However, that factor, or for that matter any other single factor, is not dispositive of defendant's

case. On remand, defendant's *prima facie* case had already been established, and as defendant acknowledges, the trial judge was making a third-stage *Batson* determination in which she assessed the genuineness and persuasiveness of the State's explanations for striking particular jurors. Therefore, the number of strikes used against minority venire members was not the primary consideration at that stage.

■ Defendant next claims that the trial court improperly relied upon her personal knowledge of the prosecutors in weighing the genuine nature of the State's challenges. The judge commented on the credibility of the two prosecutors at defendant's trial, indicating that she knew one of them personally. A trial judge's experience with local prosecutors is a relevant factor in the assessment of a defendant's *Batson* claims, and a judge is permitted to draw upon his or her own opinions of prosecutors. *People v. Andrews*, 146 Ill. 2d 413, 427-28, 588 N.E.2d 1126, 1134 (1992). Our review of the record reveals that the judge did not place undue weight on that factor or base her decision solely on that knowledge.

■ Defendant also contends that the trial judge unjustifiably focused on the defense's use of its challenges against white jurors. Defendant cites no case law stating that a trial court's discussion of that factor is detrimental to a *Batson* hearing. Nevertheless, the record does not indicate that the judge relied upon those observations to conclude that the State's use of its peremptory challenges was not discriminatory. To the contrary, the judge acknowledged that the issue of reverse discrimination was not before the court. Based upon the record as a whole, the trial court's findings that the State's reasons for striking the venire members in question were legitimate and that defendant did not prove purposeful discrimination were not against the manifest weight of the evidence and were not clearly erroneous. Therefore, we affirm the judgment of the trial court regarding defendant's *Batson* arguments.

The dissent mirrors defendant's contentions and asserts that the Seventh Circuit's opinion required the trial court to review the reasons given for striking each potential juror, to consider the totality of the circumstances and to compare the strikes against African-Americans with those against similarly situated nonminority venire members. Under the dissent's view, the trial court was required to adopt the Seventh Circuit's findings under the "law of the case" or the doctrine of *res judicata*. However, as noted above, the Seventh Circuit remanded the case for the trial court to conduct its own *Batson* hearing and analyze plaintiff's claims using the "proper methodology" for *Batson* cases and "consider[ ] the totality of the circumstances." Such direc-

tion supports the conclusion that the trial court was not required to adopt the Seventh Circuit's specific views as essential to its analysis, but instead was to conduct its own hearing based upon its review of the record. As previously discussed in this opinion, the trial judge stated in making her findings that she considered the totality of the circumstances. The fact that she did not outline each individual consideration in her analysis does not weaken her ruling. See *Fair*, 159 Ill. 2d at 76, 636 N.E.2d at 469.

The dissent also criticizes the trial judge's comments regarding her knowledge of the prosecutors. However, while the dissent extensively quotes the trial judge's observations regarding the original prosecutors, it agrees that under *Andrews*, a trial judge may consider his or her experience with prosecutors, but may not overemphasize it. Considering the record of the proceedings as a whole, the judge's observations of the prosecutors were not the overarching consideration in her analysis of defendant's *Batson* claims.

■ Lastly, we address defendant's contention in a supplemental brief that the imposition of a life sentence based upon a trial judge's finding of an aggravating factor violates *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). In *Apprendi*, the United States Supreme Court held that any fact (other than a prior conviction) that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

Here, defendant was sentenced to natural life in prison after he was convicted of killing a police officer, which was an aggravating factor under section 9—1(b)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(1)); see also Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1. Defendant argues that the trial court "made no specific finding of the basis for the sentence" and that he was not given notice that he was subject to an enhanced sentence due to the aggravating factor. He contends that the sentencing factor was not proved to a jury beyond a reasonable doubt, as *Apprendi* now requires, because although the jury found him eligible for the death penalty based upon his slaying of a police officer, the jury did not sentence him to death. Defendant asserts that under *Apprendi*, his sentence of natural life in prison must be vacated and his case remanded for imposition of a sentence not to exceed 40 years pursuant to section 5—8—1(a)(1)(a) of the Unified Code of Corrections (730 ILCS 5/5—8—1(a)(1)(a) (West 1994)).

In order to reach the merits of defendant's argument, we must first determine whether we can apply *Apprendi* retroactively. See

*Teague v. Lane*, 489 U.S. 288, 300, 103 L. Ed. 2d 334, 349, 109 S. Ct. 1060, 1070 (1989). This court recently addressed that issue in *People v. Kizer*, 318 Ill. App. 3d 238 (2000), holding that *Apprendi* does not apply retroactively to cases on collateral review. *Kizer*, 318 Ill. App. 3d at 252; see also *People v. Flowers*, 138 Ill. 2d 218, 237-39, 561 N.E.2d 674, 681-82 (1990) (discussing need for finality in criminal trials).

Even if we were to substantively consider *Apprendi*'s application to this case, defendant would not prevail. The jury found defendant eligible for a death sentence, although it did not impose such punishment, and such a finding required proof beyond a reasonable doubt. See *People v. West*, 187 Ill. 2d 418, 445, 719 N.E.2d 664, 679 (1999) (existence of statutory aggravating factor is necessary for finding of eligibility for death sentence; factor must be proved beyond reasonable doubt). Therefore, the finding required by *Apprendi* had been made.

Accordingly, defendant's convictions and sentence are affirmed. As part of our judgment, we grant the State's request to assess defendant $100 as costs for this appeal. In addition, defendant is assessed $50 as costs for oral argument.

Affirmed.

BUCKLEY, J., concurs.

PRESIDING JUSTICE CAMPBELL, specially concurring in part and dissenting in part:

I agree that this court has jurisdiction over this appeal. I also agree that defendant cannot prevail on his *Apprendi* claim. The facts supporting his sentence were submitted to and found by the jury beyond a reasonable doubt, and the defendant had pretrial notice that the State was seeking to prove them. Given this record, there is no need to definitively rule on the retroactivity of *Apprendi*. That issue will almost certainly be raised in later cases in a clearer procedural posture.

More significantly, the majority opinion's premise that neither the trial court nor this court is bound in these proceedings by the Seventh Circuit's opinion in *Coulter v. Gilmore*, 155 F.3d 912 (7th Cir. 1998), is untenable. The majority opinion admits that in *People v. Emerson*, 189 Ill. 2d 436, 464-67, 727 N.E.2d 302, 319-20 (2000), the issue was whether the trial court reasonably interpreted the federal court's order. The supreme court also held that Emerson's claim of ineffective assistance of trial counsel was barred by the doctrine of *res judicata* after that claim was rejected in the federal courts. *Emerson*, 189 Ill. 2d at 517, 727 N.E.2d at 346.

Nor is *Emerson* unique in this regard. In *State Life Insurance Co. v. Board of Education of the City of Chicago*, 401 Ill. 252, 257, 81 N.E.2d 877, 880 (1948), the supreme court held that *res judicata* applies, even when the state court believes the federal court is in error. Similarly, in *People v. Nance*, 189 Ill. 2d 142, 146-48, 724 N.E.2d 889, 891-92 (2000), the supreme court held that the State was collaterally estopped from relitigating the constitutionality of a statute held unconstitutional by a three-judge federal district court. Our supreme court stated that this was so, "[w]hatever one thinks of the federal district court's reasoning." *Nance*, 189 Ill. 2d at 147, 724 N.E.2d at 891.

The majority opinion solely relies on *People v. Eyler*, 133 Ill. 2d 173, 549 N.E.2d 268 (1989), but *Eyler* recognizes that decisions of lower federal courts may become the law of the case. *Eyler*, 133 Ill. 2d at 225, 549 N.E.2d at 291. Comity is yet another reason that the federal court's ruling is binding in this case. See *Nance*, 189 Ill. 2d at 147, 724 N.E.2d at 892. The majority opinion does not consider any of these principles. This court cannot rule in a way that negates *habeas corpus* proceedings. See, *e.g.*, *People v. Shook*, 35 Ill. 2d 597, 599, 221 N.E.2d 290, 291-92 (1966); *Monroe v. Butler*, 690 F. Supp. 521, 524 (E.D. La. 1988) (and cases cited therein), *aff'd*, 853 F.2d 924 (5th Cir. 1988), *reported in full*, 883 F.2d 331 (5th Cir. 1988), *cert. denied*, 487 U.S. 1247, 101 L. Ed. 2d 958, 109 S. Ct. 7 (1989).

As Illinois courts are required to follow the Seventh Circuit's opinion in this case, regardless of whether this court agrees with that opinion, the trial court was required to review the reasons given for striking each individual prospective juror, consider the totality of the circumstances, and compare the State's strikes against African-Americans against its treatment of similarly situated Caucasians. See *Coulter v. Gilmore*, 155 F.3d at 922. It is clear that the Seventh Circuit contemplated that the trial judge would conduct a painstaking, detailed analysis of the reasons for excluding certain venirepeople. See *Coulter v. Gilmore*, 155 F.3d at 918 (distinguishing *Mahaffey v. Page*, 151 F.3d 671, 679-80 (7th Cir. 1998)). This analysis was to include, but not be limited to, an examination of "the broader pattern of strikes." See *Gilmore*, 155 F.3d at 921.

The trial court failed to follow the procedures required by the Seventh Circuit. The trial court failed to perform a "similarly situated" analysis as to all of the challenged venirepeople, or even discuss venirepeople Rhem and Brantley. The trial court did not explicitly address the fact that the State exercised 9 of 10 challenges against African-Americans. The majority notes that this was "not the primary consideration" at the third stage of the *Batson* procedure, but the

Seventh Circuit's opinion clearly establishes that it was to be *a* consideration. Given the procedural posture of this case, the record should contain more than a conclusory statement that the relevant circumstances were considered.

Beyond the trial court's failure to conform to the Seventh Circuit's opinion, the trial judge unduly relied on a supposed personal knowledge of the original prosecutors.[4] A trial judge may consider her experience with local prosecutors as a relevant factor under *Batson*, but may not overemphasize it. *People v. Andrews*, 146 Ill. 2d 413, 427, 588 N.E.2d 1126, 1134 (1992). After all, a prosecutor's discriminatory act is not " 'immunized by the absence of such discrimination in the making of other comparable decisions.' " *Batson*, 476 U.S. at 95, 90 L. Ed. 2d at 87, 106 S. Ct. at 1722, quoting *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 n.14, 50 L. Ed. 2d 450, 465 n.14, 97 S. Ct. 555, 564 n.14 (1977).

In this case, the trial judge was not the original trial judge. The prosecutors were not the original prosecutors. The record is unclear as to whether the trial judge knew the first original prosecutor when he was a prosecutor or in his later position as a judge. Clearly, a person may act differently as a judge than as a prosecutor. The record also shows that this trial judge knew the other original prosecutor by reputation, not by experience.

Generally, a reviewing court may give deference to a trial judge's findings regarding the personalities of the prosecutors. *Andrews*, 146 Ill. 2d at 435-36, 588 N.E.2d at 1138. However, where the record does not show that the trial judge had experience with the prosecutors as prosecutors, or observed their explanations during the original *voir dire*, the review is of a cold record and there is no reason to reflexively defer to the trial judge's conclusions.

The trial judge also commented that "it is in vogue these days to be politically correct with regard to race issues, ethnicity issues, gender issues," but that "[i]t doesn't seem to be as in vogue these days to concern ourselves, *** with matters of integrity and credibility." Of course, *Batson* is not a mere matter of "political correctness," but federal constitutional law to be followed by Illinois courts. The trial

---

[4]The transcript shows that the trial judge noted that one of the prosecutors "God rest his soul, was first a Public Defender. He was second, an Assistant State's Attorney, and at the end of *** his career he was a Circuit Judge of Cook County." The trial judge added, "I believe that I will never, ever have the pleasure of knowing a more honest person, a person with more integrity ***." She then stated that the other prosecutor "had the same sort of reputation as a prosecutor and also now as a criminal defense attorney."

judge rightly emphasized issues of credibility.[5] However, when faced with a cold record, the trial judge's ability to rely on experience must be properly circumscribed to avoid the appearance of partiality in favor of the State.

In sum, the majority opinion's conclusion that there was "nothing deficient" in the most recent *Batson* proceedings is misplaced. For all of the aforementioned reasons, I concur in the majority opinion's conclusion on the *Apprendi* issue, but respectfully dissent from the majority opinion's analysis of the *Batson* issue and would remand the case for further proceedings.

---

[5]At the third step of *Batson*, the demeanor and credibility of the prosecutor(s) may be as relevant as the demeanor of the prospective jurors. See *Hernandez v. New York*, 500 U.S. 352, 365, 114 L. Ed. 2d 395, 409, 111 S. Ct. 1859, 1869 (1991) (plurality op.). The determination of those issues lies peculiarly within the province of the trial judge. *People v. Hudson*, 195 Ill. 2d 117, 137 (2001). Thus, *Batson* and its progeny encompass the trial judge's concerns.