SIXTH DIVISION

October 10, 2003

No. 1-99-0432

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

DWAYNE COULTER,

Defendant-Appellant.

)))))))))

Appeal from the

Circuit Court of

Cook County

Honorable 

Colleen McSweeney-Moore,

Judge Presiding.

JUSTICE GALLAGHER delivered the modified opinion of the court upon denial of rehearing:

On March 3, 2003, the United States Supreme Court vacated this court’s judgment in 
People v. Coulter
, 321
 
Ill. App. 3d
 
644, 748 
N.E.2d
 240 (2001) (
Coulter II
), and remanded the case to this court for further consideration in light of its decision in 
Miller-El v. Cockrell
, 537 U.S. 322, 154 L. Ed. 2d 931, 123 S. Ct. 1029 (2003).  For the reasons stated herein, we affirm.  

 
Although our previous opinion included a comprehensive summary of the state and federal court proceedings that have preceded this action, a brief review of the case’s 16-year procedural history is warranted here. 
 In 1987, Dwayne Coulter, an African-American, was convicted of the first degree murder of a white police officer.  On appeal, Coulter contended that the State’s use of peremptory challenges to strike African-American venire members violated 
Batson v. Kentucky
, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986).
  This court rejected Coulter’s arguments and affirmed his conviction, finding that although a 
prima facie
 case of discriminatory jury selection was made, the trial court was not clearly erroneous in concluding that no intentional discrimination occurred.  
People v. Coulter
, 230 
Ill. App. 3d
 209, 229, 594 
N.E.2d 1163, 1176 (1992) (
Coulter I
).  The Illinois Supreme Court denied Coulter’s petition for leave to appeal.  
People v.
 Coulter
, 146 
Ill. 2d
 636, 602 
N.E.2d
 461 (1992).
  Coulter 
proceeded to federal court, where the Seventh Circuit remanded the case to the state trial court for a new 
Batson
 hearing.  
Coulter v. Gilmore
, 155 F.3d 912, 922 (7th Cir. 1998) (
Gilmore
). 

On remand, the trial judge, who was not the same jurist who presided at Coulter’s trial, reviewed Coulter’s 
Batson
 
claim, along with the record of jury selection in Coulter’s trial.  The trial court found that the State’s articulated reasons for excusing the African-American jurors were race-neutral and not pretextual.  Coulter again appealed to this court, contending that the State failed to meet its burden of showing that legitimate, race-neutral explanations existed for each of the nine peremptory challenges used to excuse African-American venire members.  Coulter asserted that the trial court did not conduct a sufficient 
Batson 
hearing on remand.  
Coulter II
, 321 
Ill. App. 3d
 at 654, 748 
N.E.2d 
at 248.  Coulter sought a new trial or, in the alternative, asked this court to remand the case to the trial court for another 
Batson
 hearing.  
Coulter II
, 321 
Ill. App. 3d
 at 654, 748 
N.E.2d
 at 248.  This court affirmed, finding that the trial court conducted a comprehensive review of his 
Batson 
claims.  
Coulter II
, 321 
Ill. App. 3d
 at 656, 748 
N.E.2d
 at 250.  
The Illinois Supreme Court again denied Coulter’s petition for leave to appeal.  
People v.
 Coulter
, 196 
Ill. 2d
 551, 763 
N.E.2d
 321 (2001).  He appealed to the United States Supreme Court, which has vacated 
Coulter II 
and remanded the case to this court for further consideration in light of 
Miller-El
.  
Coulter v. Illinois
, 537 U.S. ___, 155 L. Ed. 2d 194, 123 S. Ct. 1384 (2003).   

Miller-El v. Cockrell

A Texas jury convicted petitioner Thomas Miller-El of capital murder and sentenced him to death.  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 944, 123 S. Ct. at 1034-35.  After raising an unsuccessful 
Batson
 claim in the state and federal courts, Miller-El filed a petition for writ of 
habeas corpus
.  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 945, 123 S. Ct. at 1036.  Both the federal district court and the Fifth Circuit Court of Appeals denied Miller-El’s request for 
habeas
 relief.
  Miller-El v. Johnson
, 261 F.3d 445, 452 (5th Cir. 2001).

In its opinion in 
Miller-El
, the Supreme Court addressed t
he Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) (28 U.S.C. §2241 
et seq
. (2000)), which restricts the power of federal courts to grant 
habeas
 relief to state prisoners.  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 950, 123 S. Ct. at 1039-40.
  Under the AEDPA, Miller-El’s right to the review of the denial of his 
habeas
 petition is not automatic.  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 949, 123 S. Ct. at 1039.  For a federal appeals court to consider the merits of Miller-El’s appeal, Miller-El must seek a certificate of appealability (COA) to review the district court’s ruling. 
 The COA requirement is designed as a threshold for review of appeals and is intended to reduce delay caused by frivolous 
habeas
 proceedings.  
To issue a COA, the court must find that the petitioner demonstrated “a substantial showing of the denial of a constitutional right.”  28 U.S.C. §2253(c)(2) (2000).  In denying Miller-El’s request for a COA, the Fifth Circuit Court of Appeals noted that a “substantial showing” occurs when a petitioner has raised issues that are “debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are adequate to deserve encouragement to proceed further.”  
Miller-El v. Johnson
, 261 F.3d at 449, citing 
Slack v. McDaniel
, 529 U.S. 473, 146 L. Ed. 2d 542, 120 S. Ct. 1595 (2000).

Ruling on Miller-El’s case, the United States Supreme Court stated that “[a]t issue here are the standards AEDPA imposes before a court of appeal may issue a COA to review a denial of habeas relief in the district court.”  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 943-44, 123 S. Ct. at 1034.  
The Court noted that a COA ruling does not weigh the merits of a petitioner’s claim but instead involves “an overview of the claims in the habeas petition and a general assessment” of the merits of the petition.  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 950, 123 S. Ct. at 1039.  For a COA to issue, the petitioner need not show he is entitled to ultimate relief; instead, he must show that “reasonable jurists would find the district court’s assessment of the constitutional claims debatable or wrong.” 
 Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 951, 123 S. Ct. at 1040.  

Applying that standard to the facts of Miller-El’s case, the Court reviewed his 
Batson
 claim and held that Miller-El was entitled to a COA
 because it was debatable that purposeful discrimination occurred in jury selection.  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 952-57, 123 S. Ct. at 1042-45.  The Supreme Court reversed the Fifth Circuit Court of Appeals and remanded the case to the federal district court for further proceedings.  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 957, 123 S. Ct. at 1045.

Analysis

At the request of this court, the office of the State Appellate Defender and the office of the Cook County State’s Attorney have submitted briefs addressing 
Miller-El
’s applicability to Coulter’s case
.
(footnote: 1)  The Appellate Defender contends that although 
Miller-El
 discussed the issue of a COA, the Supreme Court also “articulated the relevant factors to be considered in analyzing a third-stage 
Batson
 violation.”  The State asserts that 
Miller-El
 involves a federal 
habeas corpus
 proceeding governed by the AEDPA and that 
Miller-El 
recognizes the same three-step 
Batson
 analysis that the trial court used on remand in Coulter’s case.  
 

We first address
 the procedural postures of both cases and find that
 
the AEDPA-related discussion in 
Miller-El
 does not relate to Coulter’s proceedings.  As the Seventh Circuit previously recognized in 
Gilmore
, 
Coulter’s 
habeas
 petition was considered using pre-AEDPA standards because the
 petition was filed in 1993, prior to the effective date of the AEDPA.  
Gilmore
, 155 F.3d at 917; 
Lindh v. Murphy
, 521 U.S. 320, 138 L. Ed. 2d 481, 117 S. Ct. 2059 (1997).  Under that pre-AEDPA standard, when reviewing a 
Batson
 claim via a 
habeas
 petition, a factual determination made after a hearing on the merits is entitled to a presumption of correctness if fairly supported by the record as a whole; however, that presumption could be rebutted by convincing evidence.  28 U.S.C. §2254(d) (1994).  In 
Gilmore
, the Seventh Circuit 
gave the state court’s findings of fact a
 presumption of correctness but held that Coulter’s 
Batson
 rights were denied and remanded the case for another hearing.  
Gilmore
, 155 F.3d at 921-22.  T
he Seventh Circuit stated that it expressed “no opinion on how [Coulter’s 
Batson
 claims] would be resolved under the far more deferential rules established by the AEDPA.”  
Gilmore
, 155 F.3d at 922. 

Secondly, w
e have reviewed Coulter’s petition for writ of 
certiorari
, which led to the Supreme Court’s vacatur of 
Coulter II
 and the remand of this case for our further consideration.  In the petition, the Appellate Defender asked the Supreme Court to “clarify the proper analysis for third-stage 
Batson 
review and give guidance to the lower courts on correct ‘totality of the circumstances’ evaluation.”
  At the close of the petition, the Appellate Defender asks the Supreme Court to grant 
certiorari
 to “give guidance to the lower courts on what constitutes purposeful discrimination under 
Batson
.”

As previously noted, the Supreme Court has ordered this court to further consider its opinion in
 Coulter II
 in light of 
Miller-El
.  We therefore consider whether 
Miller-El 
demands a substantive change in the 
Batson
 analysis that the trial court used on remand
.
  Having given the Supreme Court’s order due weight and consideration, and having carefully reviewed 
Miller-El
 and its relevance to Coulter’s case, this court respectfully concludes that the Court’s ruling in 
Miller-El 
does not affect the validity of the trial court’s analysis of Coulter’s 
Batson
 claims.     

In 
Miller-El
, the Court analyzed the standard to be used in determining when a federal appellate court may issue a COA to review a federal district court’s denial of 
habeas
 relief.  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 943-44, 123 S. Ct. at 1034.
  As the Appellate Defender acknowledges, in 
Miller-El
, the Court addressed the issue of whether the petitioner could appeal the denial of his 
habeas
 petition and whether a COA should have issued.  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 944, 123 S. Ct. at 1034.  The Court referred to its analysis as a “threshold” examination and specifically noted that “[w]hile a COA ruling is not the occasion for a ruling on the merit of petitioner’s claim, our determination to reverse the Court of Appeals counsels us to explain in some detail the extensive evidence concerning the jury selection procedures.”  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 946, 956-57, 123 S. Ct. at 1036, 1044-45.  

Therefore, the Court in 
Miller-El
 admittedly did not base its ruling on the merits of 
Batson
 but instead discussed whether Miller-El offered enough evidence to support the issuance of a COA, which would allow Miller-El to appeal the district court’s denial of his 
habeas
 petition.  Moreover, in considering that question
, the Court outlined the same three-step 
Batson 
analysis that this court used in 
Coulter II
.  First, the defendant must make a 
prima facie
 showing that a peremptory challenge was exercised on the basis of race.  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 945, 123 S. Ct. at 1035.  To do so, the defendant must prove three factors: (1) he or she is a member of a cognizable racial group; (2) the prosecutor exercised peremptory challenges to remove members of defendant’s race from the venire; and (3) sufficient facts and circumstances existed to raise an inference that the prosecution used the peremptory challenges to exclude venire members on the basis of race.  
Coulter II
, 321 
Ill. App. 3d
 at 654-55, 748 
N.E.2d 
at 249, citing 
Batson
, 476 U.S. at 96, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1723.  If that showing has been made, the State must articulate race-neutral justifications for striking the potential juror at issue.  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 945, 123 S. Ct. at 1035.  The third stage of 
Batson
 arises when the trial court considers those reasons and determines if the defendant has established purposeful discrimination.  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 945, 123 S. Ct. at 1035.  

Noting that it was at the third stage of a 
Batson
 analysis, the Court stated in 
Miller-El
 that the key issue was the credibility of the prosecutor’s race-neutral explanations.  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 951, 123 S. Ct. at 1040.  The Court stated 
that the trial judge did not engage in a credibility analysis because Miller-El’s trial occurred prior to its own decision in 
Batson
.  Instead, the trial court followed the then-precedent
 of 
Swain v. Alabama
, 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824 (1965), which only required the judge to examine whether the prosecution’s use of peremptory challenges was part of a pattern of discrimination.  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 944, 123 S. Ct. at 1035.  In a pretrial hearing held pursuant to 
Swain
, Miller-El had presented both direct and historical evidence of a pattern and practice of discrimination in 
voir dire
 in that particular court system at the time of Miller-El’s trial.  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 946, 123 S. Ct. at 1036.  Miller-El’s counsel presented the testimony of current and former prosecutors and judges who testified they were instructed to exclude African-Americans from jury service.  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 948, 123 S. Ct. at 1038.  In addition, at a hearing held two years after Miller-El’s trial, the original trial judge admitted the evidence offered at the 
Swain
 hearing and heard additional evidence in order to consider Miller-El’s claims under 
Batson.  Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 945, 123 S. Ct. at 1035.  Miller-El presented evidence that the prosecutors questioned African-American and Caucasian venire members differently regarding their views on capital punishment.  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 946-47, 123 S. Ct. at 1036-37
.  

The Court noted that although the prosecutors had offered race-neutral justifications for their strikes, the trial court did not consider the credibility of the explanations because
 Swain
 did not so require.  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 953-54, 123 S. Ct. at 1042.  The Court stated that statistical evidence raised a question as to whether African-American venire members were excluded based solely on their race, noting that only one African-American served on the jury and “prosecutors used their peremptory strikes to exclude 91% of the eligible African-American venire members,” with 10 of the 14 strikes used against African-Americans.  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 953, 123 S. Ct. at 1042.  Applying the AEDPA to Miller-El’s case and noting that its task was to consider the debatability of his claim and not to resolve that debate, the Court held that “the statistical evidence alone raises some debate as to whether the prosecution acted with a race-based reason.”  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 953, 123 S. Ct. at 1042.  In addition, the Court noted that two white jurors who had “expressed ambivalence about the death penalty
” were empaneled, while six African-American venirepersons also stated such a position.  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 954, 123 S. Ct. at 1043.  Noting that the prosecutors’ reasons for striking the African-American jurors appeared race-neutral, the Court stated:

“Whether a comparative juror analysis would demonstrate the prosecutors’ rationales to have been pretexts for discrimination is an unnecessary determination at this stage, but the evidence does make debatable the District Court’s conclusion that no purposeful discrimination occurred.”  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 954, 123 S. Ct. at 1043.     

The Appellate Defender argues that 
Miller-El
 requires this court 
to remand Coulter’s case for a new trial or for another third-stage 
Batson 
hearing.  The Appellate Defender contends that in Coulter’s case
, neither the original trial judge nor the judge who considered Coulter’s 
Batson
 claims on remand made any credibility findings.  The Appellate Defender further asserts that in reviewing the trial court’s findings on remand, this court did not adequately consider the pattern of strikes against African-Americans, as the Supreme Court did in 
Miller-El
.  In addition, the Appellate Defender claims that this court failed to consider the prosecutors’ demeanor, the reasonableness or improbability of the prosecutors’ race-neutral explanations and whether the explanations had some basis in trial strategy.  

We first address the assertion that 
Miller-El
 requires that every 
Batson
 inquiry include a “comparative juror” analysis in which a court specifically considers the strikes against African-American venire members compared to similarly situated Caucasian potential jurors.  In 
United States v. Smith
, 324 F.3d 922 (7th Cir. 2003), 
the 
opposite conclusion was reached.  Citing 
Miller-El
, the Seventh Circuit stated that a comparison of similarly situated jurors is “only one of many permissible factors” and “was not determinative” in that case
.  
Smith
, 324 F.3d at 927.  We agree with 
Smith
 that a comparison of minority and nonminority jurors can be illustrative; however, it may not always be conclusive.  As stated in 
Coulter I
, “a venireperson may be similar in one respect to an accepted juror, yet possess a characteristic which justifies a peremptory challenge based on the totality of the circumstances.”  
Coulter I
, 230 
Ill. App. 3d
 at 228, 594 
N.E.2d
 at 1176.        

Next, the 
Appellate Defender claims that 
Coulter II
 lacked any such “comparative juror” analysis and that, to this date, “no court has engaged in a proper 
Batson
 review, including a comparative analysis of the challenged minority venirepersons and the similarly situated nonminority jurors.”  The 16-year history of this case indicates otherwise.  In 
Coulter I
, authored in 1992 by the same justice who now dissents from this opinion, this court specifically and expressly considered the 
voir dire
 of each minority 
venire member and the State’s proffered reasons for rejecting that individual.  
Coulter I
, 230 
Ill. App. 3d
 at 225-29, 594 
N.E.2d 
at 1174-76.  For example, 
in its third-stage 
Batson
 analysis in regard to minority venire member Melanie Pinkins, the court in 
Coulter I 
stated:

“The State sought to exclude Pinkins because her mother worked at Mercy Hospital, where Dr. Hemmerich (who was named as a possible defense witness) spent between five and six years of his career.  Defendant argues that this explanation is pretextual, but the State’s explanation may be fairly read as a concern that Pinkins might give more credibility to Dr. Hemmerich because he had worked at the same hospital as her mother.
  The same could not be said of any of the accepted venirepersons
.”  (Emphasis added.)  
Coulter I
, 230 
Ill. App. 3d
 at 228-29, 594 
N.E.2d 
at 1176.  

Coulter I
 conducted analyses of each of the other eight excluded minority venire members, considering the reasons that the State offered for challenging each juror and finding the reasons to be legitimate and nonpretextual.  Where the excused minority venire member was similarly situated to an accepted juror, the court addressed the commonality and concluded that the rejected minority venire member’s characteristics legitimately justified his or her exclusion.  
Coulter I
, 230 
Ill. App. 3d
 at 225-29, 594 
N.E.2d 
at 1174-76.  

Minority venire members Anthony Powe and Kevin Archibald were excluded for cause because they failed to admit to previous criminal charges when asked.  When Coulter argued on appeal that the State accepted a Hispanic venireperson who had been charged with burglary, the court in 
Coulter I
 noted that the failure to admit prior criminal charges is a sufficient race-neutral reason for exclusion and that the accepted venire member had admitted his charge when asked.  
Coulter I
, 230 
Ill. App. 3d
 at 226, 594 
N.E.2d 
at 1174.     

Melvin Igess was excused based on his employment record and the fact that he fathered children with two different women.  When Coulter argued on appeal that no nonminority male jurors were asked about the paternity of their children, the court in 
Coulter I
 stated:

 “In this case, defendant has failed to demonstrate that [two nonminority venire members were] similar to Igess as to both employment and paternity.  Thus, a peremptory challenge against a person with both characteristics could be justified.”  
Coulter I
, 230 
Ill. App. 3d
 at 228, 594 
N.E.2d 
at 1176.  

April Rhem was excluded because of her employment record, and the defense argued that reason was pretextual because Rhem’s employment record was consistent with her student status.  
Coulter I
, 230 
Ill. App. 3d
 at 227, 594 
N.E.2d 
at 1175.  The court found race was not a motivating factor in Rhem’s dismissal because a minority venire member who was selected as an alternate juror was a student.  
Coulter I
, 230 
Ill. App. 3d
 at 227, 594 
N.E.2d 
at 1175.

The remaining minority venire members also were excluded for reasons that the court in 
Coulter I
 held were legitimate and race-neutral.  Edward Terry was excluded because he indicated he was uncomfortable with the death penalty.  
Coulter I
, 230 
Ill. App. 3d
 at 225-26, 594 
N.E.2d 
at 1174.  Marcina Adams was excluded because of her employment as a nurse.  
Coulter I
, 230 
Ill. App. 3d
 at 226, 594 
N.E.2d 
at 1174.
  Teresa Brantley was excluded due to her unemployment, and Jeanell Hicks was excluded for her hesitation in answering questions in 
voir dire
.  
Coulter I
, 230 
Ill. App. 3d
 at 227-28, 594 
N.E.2d
 at 1175.  The court in 
Coulter I
 affirmed those dismissals as sufficiently race-neutral.  
Coulter I
 gives no indication that defendant argued to the original trial judge that Terry, Adams, Brantley or Hicks was similarly situated to nonminority venire members who were selected to serve on Coulter’s jury.
  The court concluded: “In sum, defendant has failed to demonstrate from the record that the trial court’s determination of no intentional discrimination was clearly erroneous.”  
Coulter I
, 230 
Ill. App. 3d
 at 229, 594 
N.E.2d 
at 1176.    

 
The Appellate Defender reiterates that the State used its first six challenges to strike minority venire members and the “State’s use of peremptory challenges reduced African-American representation from a majority of the jury to a minority.”  It is undisputed that a defendant is entitled to jury selection free from racial discrimination, as 
Batson
 holds.  However, we are unaware of any ruling that a defendant is entitled to a jury that contains more minority jurors than nonminority jurors.  The Appellate Defender also again points out that 9 out of 10 African-American venirepersons were struck; however, that statistic is not relevant to the third stage of 
Batson
.
  
That factor relates to the first stage of 
Batson
, when a trial judge determines whether a 
prima facie
 case of purposeful racial discrimination has been established and considers all “relevant circumstances,” including a pattern of strikes against minority venire members, a disproportionate use of strikes against such individuals, and the level of minority representation in the venire as compared to the jury.  
Batson
, 476 U.S. at 96, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1723; 
Coulter I
, 230 
Ill. App. 3d at 222, 594 
N.E.2d 
at 1172.  In 
Coulter I
, this court considered those factors and held that a 
prima facie
 showing of discrimination was made.  
Coulter I
, 
230 
Ill. App. 3d
 at 224, 594 
N.E.2d
 at 1173.  

In addition to that analysis, 
the trial court on remand from 
Gilmore
 
expressly considered the credibility of the prosecutor’s proferred reasons for striking particular jurors.  
Coulter II
, 321 
Ill. App. 3d
 at 652, 748 
N.E.2d
 at 247.  
The court stated that it had reviewed the transcripts of the original jury selection.
  
Coulter II
, 321 
Ill. App. 3d
 at 652, 748 
N.E.2d 
at 247.  T
he court was provided with the prosecution’s reasons for striking all of the challenged jurors and considered the credibility of those reasons under a “totality of the circumstances” test.  
Coulter II
, 321 
Ill. App. 3d
 at 652, 748 
N.E.2d 
at 247.  The court compared and contrasted the jurors who were selected with those in the venire.  
Coulter II
, 321 
Ill. App. 3d
 at 652-53, 748 
N.E.2d
 at 247.  In addition, the court expressly considered the number of African-American jurors selected in relation to the number of African-Americans in the venire.  
Coulter II
, 321 
Ill. App. 3d
 at 652-53, 748 
N.E.2d 
 at 247.  Three African-American jurors sat on the twelve-person jury, with two additional African-Americans serving as alternate jurors.  
Coulter II
, 321 
Ill. App. 3d
 at 653, 748 
N.E.2d 
at 247.  Thus, 5 members of the 14-member jury (35%) were African-Americans, a greater percentage of minorities than that in the venire as a whole (16 African-Americans out of 55 venirepersons, or 29%).  
Coulter II
, 321 
Ill. App. 3d
 at 652-53, 748 
N.E.2d
 at 247.  After completing that analysis, the trial court correctly concluded that the jury selection in Coulter’s case did not violate 
Batson
.

The dissent quotes 
Miller-El
’s reference to “the risks of imprecision and distortion from the passage of time” (
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 954, 123 S. Ct. at 1043) and states that the trial judge who reviewed Coulter’s claims on remand “was confronted with a cold record of 
voir dire
 and was in no better position than this court to review it.”  The dissent contends that this case should be remanded to the trial court to “properly address[] the claim of disparate treatment of jurors.”  To this point, Coulter’s 
Batson
 claims have been substantively considered and rejected on direct appeal in 
Coulter I
 (by the judge now dissenting), by the trial court on remand from the Seventh Circuit in 
Coulter v. Gilmore
, and again by this court in 
Coulter II
.  The dissent fails to acknowledge its author’s previous acceptance of Coulter’s jury or explain how a repeated analysis of the same record would affect its view.   

     
   In summary, because the Supreme Court’s discussion of the AEDPA does not relate to Coulter’s proceedings, because the Supreme Court 
did not alter the third-stage 
Batson
 analysis, and 
because the trial court previously performed a thorough review of
 Coulter’s 
Batson
 claims under a totality of the circumstances test, we affirm the decision of the trial court.       Affirmed.  

O'BRIEN, J., concurs.  

CAMPBELL, P.J., dissents.

PRESIDING JUSTICE CAMPBELL, dissenting:

This case has now been remanded to the Illinois courts not only by the United States Court of Appeals for the Seventh Circuit, but also by the United States Supreme Court, for reconsideration in light of 
Miller-El
.  The majority opinion "respectfully concludes that the Court's ruling in 
Miller-El
 does not affect the validity of the trial court's analysis of Coulter's 
Batson
 claims."  Mod. Op. at 6.  The majority opinion also questions why my prior dissents did not explain how another analysis of the same record would affect my view, given that I authored the opinion in 
Coulter I
 rejecting Coulter's 
Batson
 claim.  Mod. Op. at 11-13.  The answer to that question can be deduced readily from my dissent in 
Coulter II
, but will be further explained below in the course of explaining why the majority opinion's analysis of 
Miller-El
 is as flawed as the now-vacated opinion in 
Coulter II
.

A brief chronology of this case may be useful.  In 
Coulter I
, this court remanded for a proper 
Batson
 hearing, as the trial court had collapsed the 
Batson
 hearing into an undifferentiated review of defense and State contentions.  
Coulter I
, 230 Ill. App. 3d at 221, 594 N.E.2d at 1171.
(footnote: 2)  The procedure that the trial court then followed was "less than ideal," as Coulter was unable to attack the reasons offered by the State until the hearing on his motion to reconsider, and the trial court exhibited an unjustified, open hostility toward defense counsel in this capital case.  
Coulter I
, 230 Ill. App. 3d at 222, 594 N.E.2d at 1171-72.  Nevertheless, this court deemed the record sufficient for review after that remand.  
Coulter I
, 230 Ill. App. 3d at 222, 594 N.E.2d at 1172.

This court then engaged in a juror-by-juror review of the reasons the State proffered for excluding members of the venire, as well as an examination as to whether those reasons were pretextual, where appropriate.  
Coulter I
, 230 Ill. App. 3d at 225-29, 594 N.E.2d at 1174-76.  Indeed, the analysis in 
Coulter I
 was 
quite
 juror-specific.  For example, in reviewing the reason proffered for excluding Teresa Brantley, this court concluded that "deference to the trial court ruling in this respect is warranted."  
Coulter I
, 230 Ill. App. 3d at 227, 594 N.E.2d at 1175.  In reviewing the reason proffered for excluding Jeanell Hicks, we stated that "[g]iven the great deference afforded to the trial court's ruling, which is largely based on an assessment of the State's credibility, we cannot say that the trial court's ruling was clearly erroneous."  
Coulter I
, 230 Ill. App. 3d at 228, 594 N.E.2d at 1175.  

Moreover, in reviewing the exclusion of Marcina Adams, this court rejected the defense argument that if the State had been concerned about her possible knowledge of psychology or psychiatry, it would have asked other members of the venire questions about their knowledge of these fields.  
Coulter I
, 230 Ill. App. 3d at 226-27, 594 N.E.2d at 1174.  This court's analysis in 
Coulter I
 ends with a one-sentence paragraph concluding that Coulter had failed to demonstrate from the record that the trial court's ruling was clearly erroneous.  
Coulter I
, 230 Ill. App. 3d at 229, 594 N.E.2d at 1176.  This court affirmed Coulter's conviction, in part because the evidence was not closely balanced.  See 
Coulter I
, 230 Ill. App. 3d at 219-21, 594 N.E.2d at 1170-71.  Our supreme court denied Coulter's petition for leave to appeal.  
People v. Coulter
, 146 Ill. 2d 636, 602 N.E.2d 461 (1992).

Coulter then sought a federal writ of 
habeas corpus
.  The district court dismissed the petition, but the Seventh Circuit reversed and remanded the case for further consideration.  
Coulter v. Gramley
, 93 F.3d 394 (7th Cir. 1996).  On remand, the district court granted relief to Coulter, ordering that he be released or retried within 120 days.  
Coulter v. Gramley
, 945 F. Supp. 1138, 1143 (N.D. Ill. 1996).  

On appeal, the Seventh Circuit affirmed.  The federal appellate court stated that this court's "review of the prosecution's juror-by-juror justifications shows that the [S]tate's challenges, viewed one-by-one, were based on reasons previously recognized as legitimate and non-discriminatory."  155 F.3d at 919.  Nevertheless, the Seventh Circuit stated that reasons proffered for striking Jeanell Hicks and Melvin Igess "seemed to verge on the 'patently absurd.'"  155 F.3d at 920.  

Thus, the Seventh Circuit held that the trial court violated 
Batson
 by adhering to a procedure that precluded it from performing a "similarly situated" analysis based on the "totality of the circumstances."  
Coulter v. Gramley
, 155 F.3d at 921.  As the Seventh Circuit saw it:

"the juror-by-juror inquiry that the trial court conducted, unsupplemented by any final look at the record as a whole, despite defense counsel's efforts to present this evidence to the court, practically guaranteed the conclusion that the prosecution was acting race neutrally."  
Coulter v. Gramley
, 155 F.3d at 921.

The Seventh Circuit stated that "somehow, at some point, the trial court must evaluate the broader pattern of strikes ***."  
Coulter v. Gramley
, 155 F.3d at 921.  

However, the Seventh Circuit concluded that ordering that Coulter be released or retried was not the appropriate remedy, stating in relevant part that:

"an intermediate solution is possible, which is to require Coulter to be released unless within 120 days the state court holds a new hearing on his 
Batson
 claim at which the 
proper
 methodology for evaluating his claim is followed – that is, in addition to reviewing the reasons given for striking each juror, it considers the totality of the circumstances 
and compares the prosecutor's strikes against African-Americans against its treatment of similarly situated Caucasians
.  In the interest of 
comity
 and the possible efficiency of avoiding a new trial, we conclude that this more limited grant of the writ is the proper course to follow.  We therefore AFFIRM the judgment of the district court, but modify its order to grant the writ unless within 20 days the state court holds a new hearing on Coulter's 
Batson
 claim 
in accordance with this opinion.
"  (Emphases added).  
Coulter v. Gilmore
, 155 F.3d 912, 922 (7th Cir. 1998).

On remand, a trial judge other than the original trial judge ruled against Coulter's 
Batson
 claim.  The trial court did not compare the State's strikes against African-Americans against its treatment of similarly situated Caucasians.  On appeal, this court stated that "it is not the task of this court to analyze the trial court's actions in the wake of the Seventh Circuit's opinion."  
Coulter II
, 321 Ill. App. 3d at 654, 748 N.E.2d at 248.  

 This assertion was and is one of the primary errors in 
Coulter II
.  See 
Coulter II
, 321 Ill. App. 3d at 659-60, 748 N.E.2d at 253 (Campbell, J., dissenting).  In state court proceedings held pursuant to a federal writ of 
habeas corpus
, the trial court must proceed in a manner which is a reasonable interpretation of the federal court's order.  See, 
e.g.
, 
People v. Emerson
, 189 Ill. 2d 436, 464-67, 727 N.E.2d 302, 319-20 (2000).  In 
Emerson
, our supreme court also held that Emerson's claim of ineffective assistance of counsel was barred by the doctrine of 
res judicata
 following its rejection in the federal courts.  
Emerson
, 189 Ill. 2d at 517, 727 N.E.2d at 346.  Indeed, our supreme court has consistently held that where the parties and issue are the same, the federal  court's decision is binding and the doctrine of 
res judicata
 applies, even when the state court believes the federal court is in error.  
E.g.
, 
People v. Nance
, 189 Ill. 2d 142, 146-48, 724 N.E.2d 889, 891-92 (2000); 
State Life Ins. Co. v. Board of Ed.
, 401 Ill. 252, 257, 81 N.E.2d 877, 880 (1948).  

The majority in 
Coulter II
 relied on 
People v. Eyler
, 133 Ill. 2d 173, 549 N.E.2d 268 (1989), but the relevant portion of 
Eyler
 states that:

"[b]ecause lower Federal courts exercise no appellate jurisdiction over State courts, decisions of lower Federal courts are not conclusive on State courts, 
except insofar as the decision of the lower Federal court may become the law of the case.
"  
Eyler
, 133 Ill. 2d at 225, 549 N.E.2d at 291.  (Emphasis added).

Absent a jurisdictional defect, a federal court decision is the law of the case binding on 
all
 other courts, and can only be attacked on direct appeal.  
Morey Fish Co. v. Rymer Foods, Inc.
, 158 Ill. 2d 179, 186, 632 N.E.2d 1020, 1024 (1994).

In short, the majority need go no further than my dissent in 
Coulter II
 and the case law cited therein to answer the question of why I did not adhere to 
Coulter I
 in 
Coulter II
.

However, Coulter's case is before this court yet again, because the United States Supreme Court took the unusual step of vacating 
Coulter II
 and remanding for further consideration in light of 
Miller-El
.
(footnote: 3)  The majority correctly notes that Coulter's petition for a writ of 
certiorari
 asked the United States Supreme Court give guidance as to the proper "totality of the circumstances" analysis and as to "what constitutes purposeful discrimination under 
Batson
."  Mod. Op. at 6.  Rather than viewing the Supreme Court's order as a response to Coulter's requests, the majority opinion strains to dismiss 
Miller-El
 as a case:  (1) involving a threshold analysis of whether a certificate of appealability (COA) should have issued in the federal 
habeas corpus
 proceedings; (2) not based on the merits of 
Batson
; and (3) that does not alter the 
Batson
 analysis.  See Mod. Op. at 6-7, 15.  This treatment of 
Miller-El
 is perplexing, given that the majority opinion concedes that the 
Miller-El
 Court's threshold analysis tracks the three-stage procedure outlined in 
Batson
 and was expressly concerned with the third stage of that procedure.  Mod. Op. at 7-9.  

As will be shown below, 
Miller-El
 addresses the issues Coulter raised.  
Miller-El
 clarifies 
Batson
 in at least four ways that show 
Coulter II
 and the current majority opinion are based on a faulty analysis of 
Batson
 and its progeny.

First, 
Miller-El
 endorses a comparative analysis of the sort ordered by the Seventh Circuit in this case, stating that:

"even though the prosecution's reasons for striking African-American members of the venire appear race neutral, the application of these rationales to the venire might have been selective and based on racial considerations."  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 954, 123 S. Ct. at 1043.

Indeed, the majority opinion here ultimately quotes 
Miller-El
 on this point:

"Whether a comparative juror analysis would demonstrate the prosecutors' rationales to have been pretexts for discrimination is an unnecessary determination at this stage, but the evidence does make debatable the District Court's conclusion that no purposeful discrimination occurred."  Mod. Op. at 9-10, quoting 
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 954, 123 S. Ct. at 1043.

In short, the Supreme Court decided that a comparative juror analysis raised a sufficient question warranting further judicial review of the 
Batson
 claim.

Nevertheless, the majority opinion attempts to avoid the very language it quotes from 
Miller-El
 by asserting that a comparison of similarly situated venire members is permissible, but not required in every case.  Mod. Op. at 10; see 
Coulter II
, 321 Ill. App. 3d at 656-57, 748 N.E.2d at 250.  The majority's conclusion that a comparative juror analysis is not required in 
every
 case does not address the issue of whether it was required in 
this
 case.  Here, as the final passage of 
Coulter v. Gilmore
 quoted above makes clear, the trial court was to conduct a 
Batson
 hearing that encompassed a comparative juror analysis.

Unlike the now-vacated opinion in 
Coulter II
, the current majority opinion does not 
expressly
 state that Illinois courts need not comply with the indisputably valid federal court order and opinion in 
Coulter v. Gilmore
 giving rise to these proceedings.  Instead, 
the majority opinion cites 
United States v. Smith
, 324 F.3d 922, 927 (7th Cir. 2003), which relied on 
Miller-El
 and 
Coulter v. Gilmore
.  A reading of 
Smith
 shows that the Seventh Circuit concluded therein that 
Miller-El
 is consistent with 
Coulter v. Gilmore
, rather than the opposite conclusion suggested in the majority opinion.  

Moreover, in 
Smith
, the Seventh Circuit rejected Smith's comparative analysis argument, stating that it was not 
determinative
 
in Smith's case
.  
Smith
, 324 F.3d at 927.  The issue here is 
not
 whether the comparative analysis was determinative, but whether it is error to 
ignore
 a comparative analysis ordered by the Seventh Circuit and sought by Coulter in this case.  The majority opinion reaffirms its opinion in 
Coulter II
 that the trial court performed a "totality of the circumstances" test.  Mod. Op. at 14.  The majority opinion does not explain how the facts giving rise to a comparative analysis are somehow 
not
 "circumstances" or how they are circumstances that may be excluded from the "totality."
(footnote: 4)  Obviously, it cannot be said whether the comparative analysis would have been determinative in this case, precisely because the trial court failed to consider it.

Second, in addition to endorsing a comparative analysis, 
the 
Miller-El
 Court addressed the allocation of the burdens of production and persuasion in 
Batson
 proceedings.  The 
Miller-El
 Court concluded that the denial of a COA 
was in error because:

"the District Court did not give full consideration to the substantial evidence petitioner put forth in support of the 
prima facie
 case. Instead, it accepted without question the state court's evaluation of the demeanor of the prosecutors and jurors in petitioner's trial."  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 953, 123 S. Ct. at 1042.

Thus, 
Miller-El
 makes clear that the evidence presented at the first stage of the 
Batson
 process is also to be considered at the final stage of that process.  The 
Miller-El
 Court cited 
Reeves v. Sanderson Plumbing Products, Inc.
, 530 U.S. 133, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000)
, a review of a 
final judgment
 in an age discrimination case.  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 952, 123 S. Ct. at 1041; see 
Reeves
, 530 U.S. at 143, 147 L. Ed. 2d at 117, 120 S. Ct. at 2106.  
Miller-El
 thus also clarifies that the allocation of burdens of production and persuasion generally applicable in civil rights cases are also those to be applied in a 
Batson
 hearing.  The fact that the 
Miller-El
 Court relied on an indirect "
Cf.
" citation to 
Reeves
 to make this clarification demonstrates that while the 
Miller-El
 court believed that the allocation of these burdens "goes without saying," the Court had in fact not said it in the 
Batson
 context and was ultimately required to explicitly do so.  This clarification is completely consistent with the Seventh Circuit's directive in this case that the trial court take a "final look" at the "broader pattern of strikes."

Accordingly, the majority opinion's dismissal of the fact that 9 of 10 minority venire members were struck as being relevant only at the first stage of 
Batson
 is clearly erroneous
.  See Mod. Op. at 13-14.  Following 
Miller-El
, the disproportionate use of strikes against minorities, like the comparative juror analysis, is relevant at both the first and third stages of the 
Batson
 analysis.  The difference between the threshold analysis in 
Miller-El
 and an actual 
Batson
 analysis is the quantum or weight of the evidence required to prevail, not the allocation of the burdens of production and persuasion or rules regarding when evidence is to be considered.  The majority opinion does not explain why these rules apply to a threshold analysis of a 
Batson
 claim  in federal 
habeas
 proceedings and to a final judgment in a discrimination case, but not to an ordinary 
Batson
 hearing.

Third, 
Miller-El
 specifically recognized that disparate questioning based on race is evidence of purposeful discrimination.  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 954-55, 123 S. Ct. at 1043.
(footnote: 5)  As noted above, in 
Coulter I
, this court rejected a claim of disparate questioning.  
Miller-El
 makes clear that this court should not have done so.

Indeed, the majority opinion's sudden embrace of 
Coulter I
 is one of its more curious aspects.  Although the majority opinion discusses 
Coulter I
 at length, a reading of 
Coulter I
 shows that (as noted above) the 
Batson
 analysis
 was juror-specific.  There was no "final look" at the "broader pattern of strikes" after the juror-by-juror review to determine whether reasons proffered by the State that may have been deemed valid or non-pretextual when viewed in isolation may nevertheless show discrimination when viewed as a whole.

Fourth, 
Miller-El
 clarifies the extent to which a reviewing court should defer to a trial court's rulings on issues of credibility at the final stage of the 
Batson
 analysis.  The 
Miller-El
 Court rejected the notion that the reviewing court should have uncritically deferred to the trial court.  To be sure, the 
Miller-El
 Court stated that generally, "[d]eference is necessary because a reviewing court, which analyzes only the transcripts from 
voir dire
, is not as well positioned as the trial court is to make credibility determinations."  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 952, 123 S. Ct. at 1041.  However, the 
Miller-El
 court rejected the federal appeals court's holding that "the presumption of [the state court's] correctness is especially strong, where, as here, the trial court and state 
habeas
 court are one and the same."  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 953, 123 S. Ct. at 1043, citing 261 F.3d at 449.
  The Court also stated that "[e]ven in the context of federal 
habeas
, deference does not imply abandonment or abdication of judicial review."  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 952, 123 S. Ct. at 1041.  The 
Miller-El
 Court "question[ed] the Court of Appeals' and state trial court's dismissive and strained interpretation of petitioner's evidence of disparate questioning."  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 954, 123 S. Ct. at 1043.

In this case, the judge rehearing Coulter's 
Batson
 claim was 
not
 the original trial judge.  The prosecutors on remand were 
not
 the original prosecutors.  There is no evidence that either of the original prosecutors ever practiced in front of the second judge.  In addition, "the evidence at the 
Batson
 hearing was subject to the usual risks of imprecision and distortion from the passage of time." (Emphasis added.)  
Miller-El
, 537 U.S. at ___, 154 L. Ed. 2d at 954, 123 S. Ct. at 1043.  In short, the second judge was confronted with a cold record of 
voir dire
 and was in no better position than this court to review it.  That this court reviewed the record and rejected the 
Batson
 claim in 
Coulter I
 is simply irrelevant, given the current procedural posture of this case.  The relevant point is that whatever deference is due the original trial judge in this context (and 
Miller-El
 suggests too much may have been given in 
Coulter I
), less deference is due to a second judge who was not involved in the original 
Batson
 hearing.

Nevertheless, the second trial judge made credibility determinations based on her personal experience 
dehors
 the record with one of the prosecutors and the other prosecutor's professional reputation.
(footnote: 6)  The transcript shows that the trial judge noted that one of the prosecutors, "*** God rest his soul, was first a Public Defender.  He was second, an Assistant State's Attorney, and at the end of *** his career he was a Circuit Judge of Cook County."  The trial judge added, "I believe that I will never, ever have the pleasure of knowing a more honest person, a person with more integrity ***."  She then stated that the other prosecutor "had the same sort of reputation as a prosecutor and also now as a criminal defense attorney."  The trial judge also commented that "it is in vogue these days to be politically correct with regard to race issues, ethnicity issues, gender issues," but that "it doesn't seem to be as in vogue these days to concern ourselves, *** with matters of integrity and credibility."

Of course, 
Batson
 is not a mere matter of "political correctness," but federal constitutional law to be followed by Illinois courts.  Moreover, an examination of credibility is an important part of the third stage of the 
Batson
 analysis; the trial court's apparent view that these issues are separate should be troubling to a reviewing court.  In addition, both the Seventh Circuit's opinion in this matter and 
Miller-El
 make clear that the examination of credibility should consider whether the explanations offered by the State for striking minority venire members were equally applicable to majority venire members accepted by the State.  Performing the comparative analysis would not only have complied with the Seventh Circuit's order and been consistent with 
Miller-El
, but also would 
have focused on objective facts about venire members and jurors established in the record, rather than the trial judge's personal opinions.

Indeed, the latest majority opinion fails to mention that the trial court did not bother to discuss two of the venire members at issue, Rhem and Brantley.  See 
Coulter II
, 321 Ill. App. 3d at 656, 748 N.E.2d at 250.  The majority in 
Coulter II
 concluded that exhaustive findings are not required in all cases, so long as they are "sufficiently specific."  
Coulter II
, 321 Ill. App. 3d at 656, 748 N.E.2d at 250, quoting 
People v. Fair
, 159 Ill. 2d 51, 76, 636 N.E.2d 455, 469 (1994).  While not all cases may require exhaustive findings, it must be noted that our supreme court stated in 
Fair
 after a juror-by-juror review that the trial judge's findings were "sufficiently specific for 
our
 purposes." (Emphasis added.)  
Fair
, 159 Ill. 2d at 76, 636 N.E.2d at 469.  The issue of comparative analysis was not present in 
Fair
.  Ironically, the majority opinion now chooses to champion the juror-by-juror analysis of 
Coulter I
, but that analysis is insufficient in this case, for the reasons stated above.

In this case, the State claimed that Rhem and Brantley were being excluded based on their employment history.  If Coulter argued that those explanations were pretextual because a white venire member with a similar employment history to Rhem or Brantley was accepted by the State, it would follow that the trial court would have to make a finding that is sufficiently specific for the purpose of review.  In the context of a comparative analysis, such a finding necessarily would have to identify the venire members at issue.  After all, the exclusion of even one venire member on the basis of race violates 
Batson
.  
E.g.
, 
People v. Andrews
, 146 Ill. 2d 413, 434, 588 N.E.2d 1126, 1137 (1992); 
People v. McDonald
, 125 Ill. 2d 182, 200, 530 N.E.2d 1351, 1359 (1988).  
Batson
 itself emphasized that a prosecutor's discriminatory act is not "'immunized by the absence of such discrimination in the making of other comparable decisions.'"  
Batson
, 476 U.S. at 95, 90 L. Ed. 2d at 87, 106 S. Ct. at 1722, quoting 
Village of Arlington Heights v. Metropolitan Hous­ing Development Corp.
, 429 U.S. 252, 266 n.14, 50 L. Ed. 2d 450, 465 n.14, 97 S. Ct. 555, 564 n.14 (1977).  Given the case law, the trial judge's reliance on the general reputation of persons who may have never prosecuted a case before her, while ignoring the more objective analysis required by the Seventh Circuit's order (now indisputably proper under 
Miller-El
) was clearly wrong.

Nor was the trial judge's reliance on personal opinion limited to the reputation of the prosecutors.  The record shows that the trial judge noted that competent advocates generally have some general profile of the sort of juror they would like to seat and "reading between the lines" of the original transcript, looked at the profiles each side seemed to have developed for this case.  The trial judge may have been correct as a matter of fact.  However, it is well-established the trial court must focus on the reasons actually proffered by the State and cannot presume that an unarticulated, race-neutral explanation exists.  
E.g.
, 
People v. Harris
, 129 Ill. 2d 123, 184, 544 N.E.2d 357, 384 (1989).

In sum, the majority opinion repeats and magnifies the errors in 
Coulter II
.  The dissent in 
Coulter II
 sufficiently explains my reasons for not adhering to 
Coulter I
.  The analysis applied in 
Miller-El
, which the Supreme Court of the United States ordered this court to consider on remand, provides numerous additional reasons to conclude that the 
Batson
 hearings in this case have been inadequate.  
Miller-El
 endorses the comparative juror analysis.  
Miller-El
 holds that evidence put forth in support of the 
prima facie
 case also should be considered at the final stage of the 
Batson
 procedure.  The majority opinion not only fails to recognize this rule, but is based on the opposite premise.  
Miller-El
 expressly recognizes disparate questioning as evidence of discrimination, contrary to 
Coulter I
, which the majority opinion continues to embrace.  The majority opinion's deference to the trial judge is as strained and dismissive as the court reversed in 
Miller-El
.  Such deference is even less supportable here, where the trial judge was not the original trial judge and based her decision in part on her personal opinions and speculation, rather than the objective record before her.  Accordingly, the majority opinion's conclusions that 
Miller-El
 adds nothing to the established 
Batson
 analysis and that the trial court's analysis on remand was sufficient are clearly erroneous.  

As noted above, the majority questions what would be achieved by remanding this case to the trial court .  Remanding this case would grant Coulter a proper 
Batson
 hearing that conforms to the standards required by the opinion and order of the Seventh Circuit in this case and endorsed in 
Miller-El
.  Remanding this case would ensure that Coulter and members of the community who appeared for jury duty were not subjected to racial discrimination by the State.  Given the majority opinion's treatment of 
Emerson
, 
Nance
, 
Coulter v. Gramley
 and 
Miller-El
, it might be more useful to consider the foreseeable consequences of reaffirming an opinion that was deemed inadequate in the 
habeas
 proceedings and an opinion that was vacated by the United States Supreme Court.  Accordingly, I respectfully dissent.

FOOTNOTES
1: We also have considered the Appellate Defender’s petition for rehearing, as well as the dissent, which was not filed until after the issuance of the majority opinion.

2:   Our supreme court has continued to condemn the undifferentiated review of 
Batson
 claims.  
E.g.
, 
People v. Garrett
, 139 Ill. 2d 189, 201, 564 N.E.2d 784, 789-790 (1990).  
Such error is not necessarily fatal.  
E.g.
, 
Hernandez v. New York
, 500 U.S. 352, 359, 114 L. Ed. 2d 395, 405, 111 S. Ct. 1859, 1866 (1991).  Nevertheless, collapsing the 
Batson
 steps and failing to make detailed findings of fact to clarify the record when a 
Batson
 objection is raised needlessly adds to the number of costly appeals and makes appellate review unnecessarily difficult.  
People v. Beard
, 263 Ill. App. 3d 1077, 1083, 636 N.E.2d 658, 662 (1993); 
People v. Valentine
, 221 Ill. App. 3d 1082, 1086-87, 582 N.E.2d 1338, 1342 (1991).  There may be no better proof of that proposition than this case.

3:  Where a judgment order is vacated, the effect is to leave the pleadings as if no judgment were ever entered.  
Flavell v. Ripley
, 247 Ill. App. 3d 842, 847, 617 N.E.2d 1342, 1345 (1993); see Black's Law Dictionary 1546 (7th ed. 1999).  Upon receiving the Supreme Court's order vacating 
Coulter II
, this court ordered the parties to simultaneously submit memoranda regarding the impact of 
Miller-El
 on this appeal.  In retrospect, a more traditional briefing schedule, with an opportunity for parties to respond or reply to each other, might have sharpened the issues and avoided the necessity of issuing a modified opinion on rehearing.

4:  The majority opinion does state that 
Coulter I
 gives no indication that defendant argued to the original trial judge that Terry, Adams, Brantley or Hicks was similarly situated to nonminority venire members who were selected to serve on Coulter's jury.  To the extent that the majority opinion might be read as suggesting that Coulter has waived consideration of those circumstances, it should be noted that discrimination during jury selection raises such serious questions as to the fairness of the proceedings that a reviewing court should determine whether the alleged error constitutes plain error.  
People v. Blackwell
, 164 Ill. 2d 67, 74-75, 646 N.E.2d 610, 614 (1995).  In 
Blackwell
, the supreme court ruled that the defendant showed plain error where the record established a 
prima facie
 case of discrimination.  164 Ill. 2d at 76, 646 N.E.2d at 614.  

5:  In this case, the State struck Melvin Igess based on of his response to a question which the trial judge asked Igess regarding the maternity of his children, but which was not posed to the Caucasians on the panel.  
Coulter v. Gilmore
, 155 F.3d 912, 919 (7th Cir. 1998).  On remand from the Seventh Circuit, the trial judge failed to consider this factor – despite the fact that it was one of the reasons proffered by the State – focusing instead on his employment record.  However, the trial judge did not compare that record with the employment record of another venire member, John Votanek, who allegedly has a similar employment record but was not challenged by the State.

6:  Nor is this first occasion on which this trial judge made such comments.  
People v. Morales
, 308 Ill. App. 3d 162, 167, 719 N.E.2d 261, 266 (1999).  However, the 
Batson
 ruling in 
Morales
 was reversed for other reasons, rendering the point moot in that appeal.